COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

 


 
 
  
 LEROY PARRA
 LOPEZ,
  
                             Appellant,
  
 v.
  
 THE STATE OF
 TEXAS,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-00-00536-CR
  
 Appeal from
  
 358th District Court
  
 of Ector County, Texas 
  
 (TC# D-27,881) 
  
 
 


 

O P I N I O N

 

Leroy Parra
Lopez brings three issues on appeal of his conviction for aggravated assault
with a deadly weapon.  We affirm.

Facts








On May 14, 1999, Leroy Parra Lopez and his girlfriend, Ilda
Sue Ceballos Lopez (Ceballos),[1]
went to a barbecue.  Both drank at the
barbecue.  Ceballos
left the barbecue and returned to their home. 
That evening when Lopez returned, the couple began to argue.  The altercation became physical and Lopez,
who was using crutches due to a prior injury, struck Ceballos
on the back of the head with a crutch.

Nanni Guerrero, Ceballos=s daughter, was at home when Lopez
returned to the house.  She came out of
her bedroom when Lopez and her mother began fighting, and she witnessed some of
the fighting.  She went to the neighbor=s house to use their telephone to
call the police.

Officer Michael Liverett
of the Odessa Police Department responded to the disturbance call.  Upon arriving at the scene, he spoke to Ceballos who told him that Lopez had injured her.  A call was put out for Lopez, who had left
the scene.  Lopez was found approximately
five or six blocks away from the house.

As a result of the blow to her head, Ceballos experienced an egg-sized swelling behind her
ear.  She suffered with the injuries for
approximately a month and a half before the swelling broke open and drained.

Lopez was indicted on December 13,
1999 for the assault.  The indictment
alleged that

on or
about the 14th day of May, 1999, [he] did then and there, intentionally or
knowingly cause bodily injury to ILDA SUE LOPEZ by hitting her on the head with
a crutch and the Defendant did use or exhibit a deadly weapon during the
commission of the assault, to wit:  a
crutch, that in the manner of its use or intended use was capable of causing
death or serious bodily injury.

 








The indictment also contained two enhancement
paragraphs:  one for a felony conviction
of forgery and one for a felony conviction of robbery.

Lopez was found guilty of the
aggravated assault after a bench trial on October 31, 2000.  He pleaded true to the enhancement
paragraphs, and punishment was assessed at twenty-five years.

Legal and Factual Sufficiency

In his Issues One and Two, Lopez
urges that the evidence was legally and factually insufficient to support a
finding that his crutch was used in a manner that rendered it capable of
causing serious bodily injury or death. 
A person commits aggravated assault if he or she intentionally,
knowingly, or recklessly causes bodily injury to another and uses or exhibits a
deadly weapon during the commission of the assault.  Tex.
Penal Code Ann. ' 22.01(a)(1) (Vernon 1994 &
Supp. 2002); Tex. Penal Code Ann.
' 22.02(a)(2)
(Vernon 1994).  A deadly weapon, in turn,
may be Aanything that in the manner of its
use or intended use is capable of causing death or serious bodily injury.@ 
Tex. Penal Code Ann. ' 1.07(a)(17)(B)
(Vernon 1994).








We think Lopez misconstrues the test
for determining whether the crutch was a deadly weapon.  Citing Bailey v. State, 38 S.W.3d 157
(Tex. Crim. App. 2001), he states, AThe Court of Criminal Appeals stated
that the issue was not whether the actor possessed the specific intent to cause
serious bodily injury or death to the victim but whether the actor intended to
use the implement of assault in such a manner as to cause serious injury.@ 
Lopez then contends that there was no evidence that the intent behind
the use of the crutch was deadly.  If his
intent had been deadly, he would have continued the assault on Ceballos and he would have targeted a more vulnerable part
of her head.  Lopez then argues that, in
his injured condition at the time, Ait would have been virtually
impossible   . . . to be able to brandish
the crutch in such a manner as to intend serious bodily injury     . . . .@

Lopez=s interpretation seems closer to the
one that Bailey attacks, rather than the one it upholds.  In Bailey, the Court of Criminal
Appeals quoted its holding in McCain v. State, 22 S.W.3d 497 (Tex. Crim. App. 2000).  Referring to Tex. Penal Code Ann. ' 1.07(a)(17)(B),
the Bailey Court stated:

[T]he
statute provides that a deadly weapon is >anything
that in the manner of its use or intended use is capable of causing death
or serious bodily injury.=  ' 1.07(a)(17)(B) (emphasis
added).  The provision=s plain language does not require that the actor
actually intend death or serious bodily injury; an object is a deadly weapon if
the actor intends a use of the object in which it would be capable of causing
death or serious bodily injury.

 

38 S.W.3d at 158-59. 
As the Court noted in McCain, AThe placement of the word >capable= in the provision enables the statute
to cover conduct that threatens deadly force, even if the actor has no
intention of actually using deadly force.@ 
22 S.W.3d at 503.  Thus, what is important to the analysis is
not that Lopez intended to cause death or serious bodily injury, but that he
used the crutch in such a way that it was capable of causing death or serious
bodily injury.








Issue One

On review for legal sufficiency, we
view evidence in the light most favorable to the verdict.  A rational trier of
fact must have been able to find the elements of the offense beyond a
reasonable doubt.  Teer
v. State, 923 S.W.2d 11, 17 (Tex. Crim. App.
1996) (adopting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).  All of the evidence and any reasonable
inferences produced therefrom must be reviewed.  Id. 
The reviewing court=s only function is to ensure the rationality of the fact
finder.  Id.  As Williams v. State, 827 S.W.2d 614
(Tex. App.--Houston [1st Dist.] 1992, pet. ref=d), noted, AIf there is evidence that establishes
guilt, beyond a reasonable doubt, and if the trier of
fact believes that evidence, [the reviewing court] is not in a position to
reverse the judgment on sufficiency of evidence grounds.@ 
Id. at 616.  The fact finder=s conclusions are given great
deference, because he is better able to make a determination of credibility,
since he has the distinct advantage of viewing the evidence live and seeing the
demeanor and expressions of the witnesses. 
Teer, 923 S.W.2d at
19.








Although the evidence is that Lopez
only struck Ceballos once, we think it supports a
finding that he used the crutch in a way capable of producing a serious injury
or death.  According to Ceballos, the two were arguing and she asked Lopez to
leave, but he would not.   As Ceballos turned away from Lopez, he struck her once on the
back of her head with his crutch, knocking her to the ground.  Not only was the blow hard enough to force Ceballos to the ground, but it caused an egg-sized swelling
on her head, which lasted for weeks after the incident.  The blow was forceful enough that Ceballos suffered a bruise or contusion, under which there
was a hematoma or collection of blood, and caused her
to be immediately Adazed@ and to be in pain for weeks afterward.

Dr. Robert Garcia, Ceballos=s physician, testified that if the injury had occurred on a
more vulnerable part of the head, it could potentially have killed her.[2]  This evidence is sufficient to meet the legal
sufficiency challenge.  See Adame v. State, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) (AWith testimony that a BB gun is
capable of causing serious bodily injury, it is reasonable for a jury to make a
deadly weapon finding.@).  Dr. Garcia also
stated that he had seen a case where serious bodily injury had been caused when
a child was struck in the head by a crutch. 
Even though, as Dr. Garcia testified, the injury that Ceballos received was not itself life-threatening, Lopez=s use of the crutch could have caused
such a life-threatening injury.  Thus,
viewed in the light most favorable to the verdict, we believe the evidence is
legally sufficient to support the finding that the crutch was a deadly
weapon.  We overrule Issue One.

Issue Two








We turn next to a review for factual
sufficiency.  Under a factual sufficiency
standard of review, the reviewing court analyzes all of the evidence before
it.  Unlike with the legal sufficiency
standard, the evidence is not viewed in the light most favorable to the
verdict.  Rather, the evidence is assumed
to be legally sufficient and is judged as a whole.  Clewis v. State, 922 S.W.2d 126, 128, 134 (Tex. Crim. App. 1996). 
The verdict will only be reversed if it was clearly wrong and
unjust.  Id. at
129 (adopting the standard of review set forth in Stone v. State, 823
S.W.2d 375 (Tex. App.--Austin 1992, pet. ref=d,
untimely filed)).  It is not
enough that the reviewing court feels that a different result would be more reasonable.  Id. at 135.  If there is even some evidence to support the
verdict, the verdict is usually conclusive. 
The reviewing court=s power is only to prevent manifest injustice.  Id.








Although Ceballos
did not receive serious bodily injury, nevertheless she was injured, and, as
discussed above, the evidence supports a finding that Lopez used his crutch in
a way capable of causing serious bodily injury. 
There was no evidence controverting Dr. Garcia=s assertion that the blow from the
crutch could have caused serious bodily injury. 
Ceballos testified that she had been struck
from behind by the crutch.  Officer Liverett testified that Ceballos
told him she had been struck by a crutch. 
And, as Dr. Garcia testified, the injury was consistent with the way in
which it was described to have been received. 
  In support of Issue Two, Lopez
cites his diminished physical capacity at the time of the incident, Dr. Garcia=s testimony that Ceballos
was not seriously injured, Officer Liverett=s testimony that Ceballos
was drunk, confrontational, and combative, and his own testimony regarding the
fact that Ceballos had started the altercation and
that he had not known she was injured. 
In addition, he refers to the lack of credibility of Guerrero and Ceballos and the inconsistencies between stories.  Having reviewed all the evidence through the
proper prism, we believe the evidence is factually sufficient to support the
deadly weapon finding.  We overrule Issue
Two.

Issue Three

In the third issue, Lopez argues that
his trial counsel was ineffective because he failed to call fact and character
witnesses that could have corroborated Lopez=s defense.

Under an ineffective assistance of
counsel claim, Lopez must allege with specificity the acts or omissions alleged
to not have been the result of reasonable professional judgment.  The acts are then examined under the
two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Hernandez v. State, 726 S.W.2d 53, 54, 57
(Tex. Crim. App. 1986) (adopting the tests of Strickland);
Hernandez v. State, 988 S.W.2d 770, 770-72 (Tex. Crim.
App. 1999) (applying Strickland to either the guilt-innocence phase or
punishment phase of trial).  It is Lopez=s burden to establish that counsel=s performance fell below an objective
standard of reasonableness and that it is reasonably probable that the
proceeding would have resulted otherwise but for counsel=s performance, Mallett
v. State, 65 S.W.3d 59, 62-63 (Tex. Crim. App.
2001) (citing Strickland, 466 U.S. at 693-94), and this must be proven
by a preponderance of the evidence, McFarland v. State, 845 S.W.2d 824,
842-43 (Tex. Crim. App. 1992).  As the Court of Criminal Appeals noted in Ex
parte Varelas, 45
S.W.3d 627 (Tex. Crim. App. 2001):








>It is
not enough for the [applicant] to show that the errors had some conceivable
effect on the outcome of the proceeding.=  Rather, applicant must show there is a
reasonable probability that the result of the proceeding would have been
different but for the errors made by counsel. 
>A reasonable probability is a probability sufficient
to undermine confidence in the outcome.=

 

Id.
at 629 (citations omitted) (citing Strickland, 466 U.S. at 693-94).

A review of counsel=s representation is highly
deferential.  Mallett,
65 S.W.3d at 63. 
Challenged conduct will not constitute deficient performance unless it
was so outrageous that another, competent attorney would not have engaged in
it.  Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001).  In the absence of evidence of counsel=s reasoning for the conduct, we
assume the existence of a strategic motivation if any may be imagined.  Id. at 440.








Lopez=s main argument here is that his
counsel was ineffective because he failed to call witnesses for his
defense.  Regarding the failure to call
witnesses, Lopez states, ASurely counsel=s failure to secure the appearance of
and call the witnesses known to him was inaction which amounted to
constitutionally ineffective assistance of counsel.@ 
He argues that six potential witnesses would each have been available to
testify about his credibility and the fact that he is not violent.  One witness would have testified about Ceballos=s lack of credibility. 
Another would have testified that Ceballos had
been confrontational on the evening of the incident.  And three witnesses would have corroborated
his testimony that he was physically incapacitated at the time of the incident
and that he was incapable of using the crutch as Ceballos
and Guerrero testified.  Thus, Lopez alleges,
if the witnesses had been called, it would have been found that the assault was
neither intentional nor made with deadly intent.

First, as we have previously
discussed with regard to Issues One and Two, it is inapposite whether Lopez
possessed deadly intent.  As we have
previously noted, a person commits an offense of aggravated assault if he
intentionally, knowingly, or recklessly causes bodily injury to another and
uses or exhibits a deadly weapon during the commission of the assault.  Tex.
Penal Code Ann. ' 22.01(a)(1) (Vernon 1994 &
Supp. 2002); Tex. Penal Code Ann.
' 22.02(a)(2)
(Vernon 1994).








In addition, as the court in Rodd v. State, 886 S.W.2d 381 (Tex.
App.--Houston [1st Dist.] 1994, pet. ref=d) stated, A[A]n attorney is ineffective if the
failure to seek out and interview potential witnesses precludes the accused
from advancing a viable defense.@ 
Id. at 384.  In the present case, Lopez was still able to
present his defense that he did not intend to cause serious bodily injury and
that his actions were in self-defense.  The affidavits Lopez submitted during the
hearing on the motion for new trial reflect that most
of the missing testimony would have pertained to Lopez=s credibility or that of Ceballos.  Only the
testimony of Sherry Ann Fabila would have depicted
events on the day in question--and Fabila=s testimony would only have been with
respect to events that occurred earlier in the day.  Therefore, trial counsel=s failure to call the witnesses did
not preclude Lopez from advancing his defense. 
Cf. Rodd, 886 S.W.2d at 384 (holding
that where potential witnesses would have been character witnesses only, trial
counsel=s failure to call them did not
preclude appellant from advancing viable defense that he did not commit the
offense and that he was physically unable to commit the offense).  And we cannot say that Lopez has shown a reasonable
probability that the outcome would have been different if the witnesses had
been brought forth.

Furthermore, an ineffective
assistance claim is established by a review of the totality of representation
and not through isolated events.  Smith v. State, 676 S.W.2d 379, 385 (Tex. Crim. App. 1984).

During the trial, counsel
cross-examined each of the witnesses.  He
asked Ceballos if she had been drunk on the night in
question and if she had started the fight that resulted in the injury.  He called Ceballos=s credibility into question by
contrasting her recollections from the night with those of the officer on the
scene.  As a result of counsel=s cross-examination, Ceballos stated that Lopez was using both crutches at the
time of the incident, a statement supporting Lopez=s assertion of his physical
incapacity at the time of the incident. 
Counsel also cross-examined Guerrero, highlighting the inconsistencies
with the various stories she had given. 
He cross-examined Dr. Garcia regarding the seriousness of Ceballos=s injury.  He
questioned Officer Liverett regarding Ceballos=s possible intoxication on the night in question and her lack
of cooperation with the authorities after they responded to the call.  Then, he questioned Officer Liverett regarding Lopez=s inability to get away from the
scene.  








Counsel also elicited testimony from
Lopez.  Lopez was questioned about his
good conduct following his prior troubles with the law.  And Lopez was questioned about his injuries
and his inability to work as a result. 
Lopez was allowed to give his version of events; specifically, Lopez was
allowed to testify that Ceballos had started the
physical altercation and that he had merely attempted to ward off her
attack.  Lopez also stated that he did
not hit Ceballos on the back of her head.

During his closing argument, counsel
for Lopez highlighted the inconsistencies of the different stories.  He asserted that the injury was not a serious
injury and that the crutch was not a deadly weapon.

Lopez=s counsel performed vigorous
cross-examination of witnesses, highlighting inconsistencies in stories and
casting doubt on the credibility of witnesses. 
He was able to present Lopez=s defense.  Therefore, we believe that the totality of
the events shows that counsel provided Lopez adequate representation during
trial.  Accordingly, we overrule Lopez=s third issue.

Conclusion

For the foregoing reasons, we affirm.

 

                                                                        


SUSAN
LARSEN, Justice

July 18, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)

 











[1]For
purposes of clarity, we hereafter refer to Ms. Lopez as Ms. Ceballos.  Ceballos is Ms.
Lopez=s maiden
name.  She previously took Mr. Lopez=s name, although the two were never
married, and she has continued to use his name over the years.  In addition, appellant refers to Ms. Lopez by
her maiden name.





[2]We
note that Lopez states the same in his brief: 
ADr.
Garcia did state a more serious condition might have resulted if the
blow had occurred nearer the temple.@