Opinion issued August 11, 2005














In The
Court of Appeals
For The
First District of Texas
 

 
 
NOS. 01-03-01157-CR
          01-03-01158-CR
          01-03-01159-CR
____________
 
ROBERT WAYNE BLEVINS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause Nos. 41,486; 41,487; and 41,488
 

 
 
MEMORANDUM OPINION
          In cause number 41,486, a jury found appellant, Robert Wayne Blevins, guilty
of aggravated robbery, found appellant used a deadly weapon in the commission of
the offense, and sentenced him to 25 years’ imprisonment. In cause number 41,487,
the jury found appellant guilty of aggravated sexual assault, found appellant used a
deadly weapon in the commission of the offense, and sentenced him to 60 years’
imprisonment. In cause number 41,488, the jury found appellant guilty of aggravated
kidnapping, found that appellant used a deadly weapon in the commission of the
offense, and sentenced him to 50 years’ imprisonment.
          Appellant argues that the evidence was legally insufficient to sustain the
conviction for aggravated robbery because the State failed to prove that the knife
alleged in the indictment was a deadly weapon and that appellant used and exhibited
a deadly weapon. For all three convictions, appellant argues that the evidence was
legally insufficient to sustain the jury’s affirmative deadly weapon finding and that
the knife appellant allegedly used was a deadly weapon. Appellant, who raised an
insanity defense, also contends that the trial court erred in excluding lay testimony
regarding appellant’s mental state prior to the commission of the offense. Finally,
appellant argues that the trial court erred in admitting hearsay testimony that denied
appellant his right to confront the witnesses. We affirm.  
Background
          William Budd testified that, during the early morning hours of September 22,
2001, he entered a “Buc-ee’s” convenience store. Budd selected some items, but
became suspicious when he was unable to find a store clerk. Budd asked another
patron to notify the police.
          Officer W. Cornwell, a police officer for the City of Brazoria, testified that,
upon arriving at the store, he spoke with Budd and searched the store and the
surrounding area. When he could not find the store’s clerk, Cornwell requested
dispatch contact the Buc-ee’s store manager.
          The manager arrived and removed the surveillance tape to determine when the
clerk, the complainant, was last in the store. As the tape was rewinding, the manager
and Cornwell discovered that all of the cash was missing from the register. The
surveillance tape revealed a man entered the store and demanded that the complainant
give him all of the money in the register. After she placed the money in a bag, the
man forced the complainant to leave the store with him. 
          Cornwell was contacted by the West Columbia Police Department who advised
him that an automobile accident recently occurred on the highway alongside the Buc-ee’s and that the female found inside the car said that she was abducted from the Buc-ee’s. Officer C. Mills, a patrol sergeant for the West Columbia Police Department, 
testified that, when he arrived at the scene of the accident, he saw a truck which had
driven off the road and landed on its side. Inside the truck, Mills saw the
complainant, who was naked and had blood on her face and hands. The complainant
told Mills that she had been kidnapped and that her kidnapper was hiding behind a
nearby barn. Mills searched the area and found the complainant’s clothes. The
officers found appellant and brought him to the complainant who identified him as
her kidnapper. 
          Officer L. Odom, a patrolman for the Sweeny Police Department, testified that,
when he arrived, the other officers had already located appellant and were in the
process of handcuffing him when Odom saw a “utility knife” fall out of appellant’s
pocket. 
          Investigator Epps testified that the complainant told him that appellant entered
the store and initially asked for a pack of cigarettes, but then demanded that the
complainant give him all of the money in the register. After he got the money,
appellant told the complainant to leave the store with him and to get into his truck. 
While in the truck, appellant ordered the complainant to remove all of her clothes. 
Appellant then forced the complainant to perform oral sex on him. The complainant
said that, while in the truck, she felt a knife pressed against the back of her neck and
later against her back. Appellant told the complainant that he was crazy and, if she
did not do what he said, he would kill her. The complainant then forcefully pulled
the steering wheel, causing the truck to drive off the highway and crash.
          The complainant testified that, during his robbery of Buc-ee’s, appellant
threatened to shoot her if she did not follow his orders. While he never brandished
a firearm, the complainant saw “something shiny” underneath appellant’s arm, and
she believed that it was a gun. Appellant told the complainant to leave the store with
him and get into his truck. While leaving the store, appellant wrapped his arm around
the complainant’s neck and placed a knife against her throat. He said, “Just do what
I say and I won’t kill you.” 
          Once inside the truck, appellant told the complainant to remove all of her
clothes. Appellant placed a knife against the complainant’s back and forced her to
perform oral sex on him. Appellant threatened to kill the complainant if she did not
“do a good job.” When asked if appellant ever explained why he was taking her to
a secluded area, the complainant responded, “He said that he was going to cut me in
little pieces.” The complainant’s next recollection was pulling the truck’s steering
wheel, causing the truck to crash, and then blacking out. Upon regaining
consciousness, the complainant remembered appellant yelling at her and ordering that
she flee the scene with him. The complainant, injured and disoriented, did not
comply. Appellant then took the complainant’s clothes and ran away, leaving the
complainant in the truck. The complainant testified that, although she felt the knife
on her neck and back, she never actually saw the weapon.
          Pamela Blevins, appellant’s sister, testified that, before his arrest, appellant told
her that he was “having strange thoughts” and he was not receiving proper medical
attention from his physician. Blevins recalled an incident when appellant came home
in the middle of the night covered in blood, but he was unable to remember what had
happened to him. She also recalled witnessing appellant attempt suicide. Blevins
stated that appellant endured a severe back injury while performing construction work
in 1993. As a result, appellant underwent several surgeries, was placed on
medication, and has been under the care of doctors ever since.
          Linda Smith, a mental health liaison for the Gulf Coast Center, testified that she
interviewed appellant after his arrest. During the interview, appellant was unable to
identify where he was or what day it was. Appellant told Smith that he had a desire
to hurt himself. 
          Audrey Philpot, appellant’s mother, testified that appellant could not afford his
prescribed medication and, as a result, would “stretch” his medication by reducing
his dosage. During visits in jail with him after his arrest, Philpot stated that appellant
would hallucinate.
          Dr. Milton Williams, a psychiatrist, examined appellant after he was arrested
and testified that appellant told him that he had experienced hallucinations in the form
of voices telling him to harm himself or to run away. However, Williams concluded
that, on the day of his arrest, appellant was not insane.
          Mark Blevins, appellant’s brother, testified that, when he visited appellant in
jail, appellant did not know that he was in jail, but thought that he was in the hospital. 
Mark also testified that, before his arrest, appellant was shocked while performing
electrical work on a trailer. 
          Dr. Michael Fuller, a psychiatrist for the Brazoria County jail, examined
appellant and testified that appellant was currently being prescribed anti-psychotics,
anti-depressants, anti-anxiety, and pain medications. Fuller diagnosed appellant as
suffering from bi-polar disorder. 
          Dr. Edward Friedman, a psychologist employed by Harris County, testified that
appellant was competent to stand trial. Friedman stated that, during his evaluation
of him, appellant presented inconsistent accounts of whether or not he was taking the
proper dosage of his medication prior to his arrest. Further, Friedman determined that
he was not presented with any evidence which would lead him to conclude that
appellant was insane at the time of his arrest.
           Deadly Weapon
          In points of error one and two, appellant argues that the evidence was legally
insufficient to sustain the conviction for aggravated robbery because the State failed
to prove that the knife referenced in the indictment was a deadly weapon and because
the State failed to prove that appellant used and exhibited a deadly weapon. In points
of error three and four, appellant argues that, for all three convictions, the evidence
was legally insufficient to sustain the jury’s affirmative deadly weapon finding and
that the knife appellant allegedly used was a “deadly weapon.”
          In reviewing the evidence on legal sufficiency grounds, we view the evidence
in the light most favorable to the prosecution to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a reasonable
doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
          Appellant threatened to cut the complainant into small pieces, and the
complainant felt a sharp object on her back and neck. Officer Odom testified that he
saw a “utility knife” fall out of appellant’s pocket when he was arrested. On appeal,
appellant contends that, because the victim never saw the knife, the knife was not a
deadly weapon. There is both direct and circumstantial evidence that would allow
a reasonable fact finder to conclude that the knife found on appellant was used as a
deadly weapon in a threatening manner. When an object is used to threaten deadly
force, it is a deadly weapon. McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App.
2000). 
          In McCain, the victim never saw the knife, she only saw a long dark object,
which she believed to be a knife, and was afraid of being cut. Id. at 499. This was
sufficient evidence to support a finding that the knife was a deadly weapon due to “its
use or intended use.” Id. Even though McCain did not brandish, refer to, or even
openly display the knife, the court held that he “did use and exhibit a deadly weapon
to wit: a knife.” Id. Here, because the complainant felt the knife pressed against her
and because appellant threatened to cut her “in little pieces,” there is legally sufficient
evidence to support the finding that appellant’s knife was a deadly weapon. 
          Accordingly, we overrule points of error one, two, three, and four.
Admission and Exclusion of Evidence
          In point of error five, appellant argues that the trial court erred in excluding 
lay testimony concerning appellant’s mental state before the commission of the
offense. In points of error six and seven, appellant argues that the trial court erred in
admitting hearsay testimony that denied him his right to confront his witnesses.
          We review a trial court’s decision to admit or exclude evidence for an abuse
of discretion. Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996). Where
the trial court’s evidentiary ruling is within the “zone of reasonable disagreement,”
there is no abuse of discretion, and the reviewing court must uphold the trial court’s
ruling. Id. at 102. Error may not be predicated upon a ruling which excludes
evidence unless a substantial right of a party is affected and the substance of the
evidence was made known to the court by offer of proof or was apparent from the
context within which the questions were asked. Tex. R. Evid. 103(a)(2). The
erroneous admission or exclusion of evidence does not result in reversible error
unless it affects a substantial right of the accused. See Tex. R. App. P. 44.2(b);
Alexander v. State, 137 S.W.3d 127, 130 (Tex. App.—Houston [1st Dist.] 2004, pet.
ref’d). Substantial rights are affected when the error has a substantial and injurious
effect or influence in determining the jury’s verdict. King v. State, 953 S.W.2d 266,
271 (Tex. Crim. App. 1997).
Mental State 
          In point of error five, appellant argues that, during the guilt stage of trial, the
trial court erred in sustaining the State’s objection to lay testimony concerning
appellant’s mental state prior to the commission of the offense.
          A witness who is not testifying as an expert must give testimony in the form
of opinions or inferences limited to those opinions or inferences which are (1)
rationally based on the perception of the witness and (2) helpful to a clear
understanding of the witness’s testimony or the determination of a fact in issue. Tex.
R. Evid. 701. The requirement that an opinion be rationally based on the perception
of the witness is itself composed of two parts: (1) the witness must establish personal
knowledge of the events from which his opinion is drawn and (2) the opinion drawn
must be rationally based on that knowledge. Fairow v. State, 943 S.W.2d 895, 898
(Tex. Crim. App. 1997). Ultimately, whether an opinion meets the fundamental
requirements of rule 701 is within the sound discretion of the trial court, and the trial
court’s decision regarding admissibility should be overturned only if the trial court
abuses its discretion. Id. at 901.           Pamela Blevins, appellant’s sister, testified that, in September 2001, prior to
his arrest, appellant told her that he was having strange thoughts, hearing strange
things, and needed some help. She testified that he was not receiving proper medical
care and had attempted suicide. After describing appellant’s apparent hallucinations
in jail after his arrest in this case, the following exchange occurred:
[Defense] Now, would you state whether or not, based on your
observations, [appellant] became more paranoid and
suspicious of other people?
 
[State] Objection, your Honor. The witness is not qualified.
 
[Court]Sustained.
 
[Defense] Based on what [appellant] told you and his demeanor and
actions, is there anything that would indicate that he’s
become more paranoid and suspicious since he’s been
taking his medications?
 
[State] Objection, your Honor, as to what the witness’
qualifications are.
 
[Court] Sustained.
 
[Defense] Can I get a clarification, your honor?
 
[Court] Yes, sir. Witness hasn’t been qualified with regard to any
medical opinions, and what you’re asking for would result
in her giving an opinion as to his paranoia.
 
[Defense] My question was meant to just her observations of what he
appeared to be and things he was saying, not her opinion.
 
[Court] That wasn’t what you asked. You couched it in terms of
his paranoia and fear of other people, and that would call
for a medical opinion and an expert opinion. So, I’m not
going to permit it.
 
[Defense] Based on your observations of [appellant], of his demeanor
and appearance and what he said, has anything, based on
those observations, made you believe he was more
suspicious of others?
 
[State] Object to leading.
 
[Court] Sustained. That’s pretty much the same question. This is
a fact witness.
 
[Defense] What observations have you seen of [appellant] since
1998?
 
[Blevins] That he was in need of supervision and medical care – 
 
[Court] Hold it. Hold it. Ladies and gentlemen, please go to the
jury room.
 
(The jury left the courtroom.)
 
[Court] You can’t tell us what you think insofar as his need for
supervision because you’ve not been qualified as anyone
who has the expertise such that you could.
 
[Blevins] Would I be allowed to say that he believed that he was not
receiving – 
 
[Court] That’s mere speculation.
 
[Blevins] Well, he told me that.
 
[Court] You can testify as to what you saw.

After this exchange, the defense counsel conducted a voir dire examination of
Blevins, which the trial court agreed could be used for bill of exception purposes. 
During the bill, Blevins testified that she observed appellant during his apparent
mental breakdown in 1998—three years before his abduction of the complainant. She
testified that she had observed appellant in chronic and severe pain for years, and, “if
he didn’t have his medications, he couldn’t get out of bed. He had a hard time
functioning.”  
          At the conclusion of the bill, the State objected, stating that Blevins’s testimony
was irrelevant. The State argued that “Any physical testimony about his physical –
not being able to get out of bed, not being able to work, State’s going to object to
relevancy, back in 1998, how that’s relevant to 2001 and his mental health of 2001. 
State’s not sure.” The trial court sustained the objection, and Blevins was excused
without cross-examination.
          On appeal, appellant argues that this “lay testimony was a precursor to the
expert testimony of the psychiatrists called” to support appellant’s insanity defense. 
Appellant further argues that the bill clearly “established first hand knowledge” and 
the “record show[s] that she could rationally base her opinion on her perception of
Appellant’s words and actions.” He contends that the testimony was offered to “show
his mental state prior to the alleged offenses and that his mental condition was not a
recent occurrence developed solely to defend against these accusations as the State
argued in final argument.”


 
          It is unclear from the record what testimony appellant was attempting to
introduce through Blevins’s bill of exception. In his brief, he discusses various
definitions of “paranoia” and whether a lay person can testify to such. However,
during his bill in the trial court, he did not question Blevins regarding her brother’s
alleged paranoia around the time of the offenses in this case. Appellant must preserve
error by showing what the witness’s response would have been. Garza v. State, 846
S.W.2d 936, 939 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d). Accordingly,
appellant has failed to preserve error. See Tex. R. App. P. 33.1.
          We overrule point of error five.

Hearsay and Confrontation Clause
          In points of error six and seven, appellant contends that, during the punishment
hearing, the trial court erred in admitting an exhibit containing a motion to adjudicate
guilt for the offense of carrying a weapon on a liquor-license premises. Appellant
argues that this was error because (1) it was hearsay and (2) he was denied the right
to confront his accuser.
          When the State attempted to introduce the exhibit containing the still-pending
motion to adjudicate, appellant objected as follows:
I do object to [the exhibit], your Honor, for the following reasons. It
includes hearsay on top of hearsay. It also denies the defendant the right
to confront the witness who made the allegations or statements in the
motion under the Sixth Amendment of the United States Constitution
and Article 1, Section 10 of the Texas Constitution; and if the Court
admits it, we would like an appropriate limiting instruction.

The trial court denied the objection, but instructed the jury as follows:
You are instructed that there is evidence before you . . . in this
case regarding the defendant having committed offenses which have not
resulted in final dispositions in a court of law.
 
You cannot consider this testimony or this exhibit for any purpose
unless you find and believe beyond a reasonable doubt that the
defendant committed such other offenses, if any is alleged to have been
committed.
 
Again, you will receive the same instruction that any proof by the
State and any proof is to be proof beyond a reasonable doubt, and you
must find beyond a reasonable doubt that those allegations are true
before you can consider them in this phase of the trial.

Following the instruction, the trial court admitted the exhibit, and the State
questioned probation officer, Joneska Horn, regarding appellant’s marijuana use and
his failure to pay the laboratory processing fees as alleged in the State’s motion to
adjudicate. Horn read to the jury, without objection, each of the conditions alleged
to have been violated as set out in the objected-to exhibit. She testified, without
objection, that appellant violated the terms of his probation by (1) committing the
offense against the complainant in this case, (2) using a controlled substance as was
evidenced by the presence of marijuana metabolite in his urine, (3) failing to report
for six months, (4) failing to maintain employment, and (5) failing to perform any of
his required community service. 
          Appellant waived any error by failing to object to Horn’s testimony. If a
defendant objects to admission of evidence, but the same evidence is introduced from
another source without objection, the defendant waives his earlier objection. Massey
v. State, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996). 
          Accordingly, we overrule points of error six and seven.
Conclusion
          We affirm the judgments of the trial court.

                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).