Tywoo Keyondi McCAIN, Appellant,

v.

The STATE of Texas

No. 716–99.

Court of Criminal Appeals of Texas, En Banc.

March 22, 2000.

Stephen A. Doggett, Richmond, for appellant.

Jeffrey L. Van Horn, Assist. St. Att., Austin, Matthew Paul, State's Atty., Austin, for the State.

## OPINION ON STATE'S PFTITION FOR DISCRETIONARY REVIEW

KELLER, J., delivered the opinion of the Court in which McCORMICK, P.J., and MANSFIELD, PRICE, HOLLAND, WOMACK, JOHNSON and KEASLER, J.J., joined.

Our prior opinion is withdrawn.

Appellant was convicted of aggravated robbery. On appeal, he alleged that the evidence was legally and factually insufficient to prove the aggravating element of aggravated robbery—that he used or exhibited a deadly weapon. *See* Texas Penal Code § 29.03(a)(2). Agreeing with appellant that the evidence was legally insufficient to prove that element, the Court of Appeals reformed the conviction to robbery and remanded the case for a new trial on punishment.[1] *McCain v. State,* 987 S.W.2d 134, 137–138 (Tex.App.—Houston [14th Dist.] 1998). The District Attorney (DA) and the State Prosecuting Attorney (SPA) petitioned for discretionary review. We granted ground 1 of the SPA's petition. We will reverse.

## I. BACKGROUND

### A. The Case

The indictment alleged that appellant did "use and exhibit a deadly weapon, to wit: a knife, which in the manner of its use and intended use was capable of causing death or serious bodily injury." At trial, the evidence showed that appellant kicked in the door of the complainant's kitchen and hit her numerous times with his fist. During the attack, the complainant saw a long, dark object partly sticking out of appellant's back pocket. She believed that the object was a knife and was worried that appellant would cut her with it. There was no evidence that appellant touched, brandished, referred to, or overtly displayed the knife in any way other than having it partly sticking out of his pocket. Eventually the complainant escaped appellant's attack and later returned to her house with the police. Upon her return home, she discovered that her car and pager were missing. Appellant was later arrested, and the police found, on appellant's person, a butcher knife with a nine-inch blade.

### B. The Court of Appeals' Opinion

The Court of Appeals first determined that the knife "was not a deadly weapon *per se* because it was not a type designed to be used as a weapon." *Id.* at 136. The court then proceeded to determine whether the knife was a deadly weapon due to its "use or intended use." *Id.* The Court of Appeals initially offered an explanation for finding that the knife was indeed a deadly weapon:

> However, the fact that it [the butcher's knife] was in appellant's pocket during the violent assault could support an inference that appellant's purpose in having it there at that time, and thus its *intended* use, was for causing death or serious bodily injury. Similarly, in light of the highly violent manner in which appellant entered the complainant's house and began beating her, the fact that she could see that he had brought such a knife was sufficient to reasonably place her in fear that he planned to use it on her. At a minimum, the visibility of the knife conveyed to the complainant a greater threat to her safety than would have existed if no knife were visible to her.

*Id.* (bracketed material inserted). Despite this reasoning, however, the Court of Appeals was unwilling to find that the knife was a deadly weapon due to its intended use because "we have found no Texas Court of Criminal Appeals opinion in which the carrying of a potentially deadly weapon in this manner, without at least some form of threatening conduct relating to it, was found sufficient to show either the existence or use of a deadly weapon." *Id.*

The Court of Appeals then discussed caselaw interpreting the portion of the community supervision statute relating to deadly weapon findings. *Id.* The court observed that, under Article 42.12 § 3g(a)(2), "the existence and use of a deadly weapon includes not only the wielding of a potential weapon with effect but

---

1. A charge on the lesser-included offense of robbery had been submitted to the jury.

also extends to 'any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony.'" *Id.* at 136–137 (quoting *Hill v. State*, 913 S.W.2d 581, 583 (Tex.Crim.App. 1996) and discussing, in a footnote, *Patterson v. State*, 769 S.W.2d 938 (Tex.Crim. App.1989)). Although the Court of Appeals characterized the deadly weapon finding statute as "analogous" and stated that "we perceive no difference in the policy underlying aggravated offense statutes and the community supervision provision," that court nevertheless refused to apply the reasoning of the community supervision cases because "we have found no Texas case in which the broader community supervision rationale was applied to review the sufficiency of evidence to prove the aggravating element of an aggravated offense." *Id.*

Instead, the Court of Appeals relied upon the reasoning of the United States Supreme Court in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The court observed that the Supreme Court held that "use," in the context of a federal statute, involves employing a firearm "in a way that makes it an operative factor in the offense, such as brandishing, displaying, striking with, firing, or attempting to fire the firearm," or making a verbal reference to a firearm that is calculated to change the circumstances. *McCain*, 987 S.W.2d at 137. The Court of Appeals noted the existence of a conflict between *Bailey* and our opinion in *Patterson*. *McCain*, 987 S.W.2d at 137 n. 5. The court further stated that "we have found no authority that any lesser use [than that described in *Bailey* ], such as mere possession or carrying of a potentially deadly weapon, is adequate" to show the existence and use of a deadly weapon under Texas Penal Code § 29.03(a)(2). *McCain*, 987 S.W.2d at 137 (bracketed material inserted). The Court of Appeals concluded:

> Moreover, despite the knife in this case being visible to the complainant and thereby sufficient to create a reasonable fear in her mind that it would be used on her, we find no authority that the mere visibility of a potentially deadly weapon during an offense is a sufficient use to support a finding that it is a deadly weapon or that it has been used or exhibited in the offense.

*Id.*

### C. The State's Arguments

We granted the SPA's first ground for review:

> Where a knife is not designed solely for the purpose of inflicting death or serious bodily injury, but is capable of causing such, is it nevertheless to be considered a deadly weapon pursuant to V.T.C.A., Penal Code § 1.07(a)(11)(A), if it is used to threaten or place another in fear of death or serious bodily injury? [2]

In support of this ground the SPA makes several arguments. First, the SPA contends that an object can be a deadly weapon by design, under Texas Penal Code § 1.07(a)(17)(A), even though the object may have been designed for a manifest purpose apart from being a deadly weapon (a kitchen knife, for example). The SPA criticizes, as being too broad, language in *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim.App.1991), which stated that certain objects, such as a kitchen knife, that have a designed purpose other than as a deadly weapon cannot be considered deadly weapons "unless actually used or intended to be used in such a way as to cause death or serious bodily injury within the meaning of Section 1.07(a)(11)(B)." The SPA also contends that this language in *Thomas* is inconsistent with other Texas caselaw hold-

---

**2.** In 1994, the definition of "deadly weapon" was renumbered from § 1.07(a)(11) to § 1.07(a)(17), without any substantive changes. Appellant's offense was committed in 1995, so the (a)(17) numbering is the correct version of the statute. We shall refer to the correct numerical designation, except where the old designation appears in a quoted passage.

ing that a knife can be a deadly weapon if it is used to threaten someone or to place someone in fear of death or serious bodily injury, even if the perpetrator had no intention of following through on his threat.

Further, the SPA cites the California case of *People v. Raleigh,* 128 Cal.App. 105, 16 P.2d 752 (1932) as establishing an instructive approach to deadly weapon issues. According to the SPA, the *Raleigh* standard requires: (1) the instrument must be "capable" of being used in a deadly fashion, and (2) the possessor must intend that it serve such a purpose when the crime is committed. The SPA concludes: "an instrument that may be 'innocent' by design may become a deadly weapon through the nature of its usage."

According to the SPA, these above arguments are reasons for interpreting more expansively the "design" part of the "deadly weapon" definition (i.e. § 1.07(a)(17)(A)). In its petition for discretionary review, the SPA appeared to concede that the butcher knife was not a deadly weapon under § 1.07(a)(17)(B), which defines deadly weapon by its use or intended use: "As to subsection (B). . . . We do not disagree with the court's conclusion that there was no evidence that the appellant used or intended to use the knife to inflict death or serious bodily injury." In its brief, however, the SPA clarifies its position, contending that the butcher knife could be considered a deadly weapon under subsection (B), on the basis of its intended use, so long as "the defendant would have used the knife to cause death or serious bodily injury *if necessary to consummate the offense*" (emphasis in original). Nevertheless, the SPA contends that the nature of the knife's usage should also have been taken into account in analyzing whether the knife was deadly by design under § 1.07(a)(17)(A). In connection with this contention, the SPA argues that the words "designed, made, or adapted" in subsection

A indicate that an object may be a deadly weapon under subsection (A) for reasons that include but are not limited to the object's physical design.

## II. ANALYSIS

A robbery becomes an aggravated robbery if the actor "uses or exhibits a deadly weapon." Texas Penal Code § 29.03(a)(2).[3] "Deadly weapon" is defined as follows:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Texas Penal Code § 1.07(a)(17).

In interpreting a statute, we adhere to our cardinal rule of statutory construction: We must interpret a statute in accordance with the plain meaning of its language, unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

As the Court of Appeals pointed out, we have already interpreted a similar statute in the past. Article 42.12 § 3g addresses deadly weapon findings that adversely affect eligibility for community supervision. That statute incorporates the Penal Code definition of "deadly weapon" and contains "use or exhibit" language parallel to that contained in the aggravated robbery statute:

(a) The provisions of Section 3 of this article do not apply:

. . .

(2) to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony of-

---

**3.** There are other methods of committing aggravated robbery. We are not concerned with those in the present case.

fense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.

Article 42.12 § 3g(a)(2). The caselaw interpreting § 3g(a)(2) focuses solely upon the language of the provision. *Patterson*, 769 S.W.2d at 940. Given the similarity of this language to that found in the aggravated robbery statute, we conclude that *Patterson* and its progeny are indeed relevant to interpreting the aggravated robbery section. Hence, in accordance with *Patterson*, a person "uses or exhibits a deadly weapon" under the aggravated robbery statute if he employs the weapon in any manner that "facilitates the associated felony." *Id.* at 941.

The Court of Appeals' reliance upon the Supreme Court's opinion in *Bailey* is misplaced. We have recently declined to follow *Bailey* in the community supervision context because the federal statute involved in *Bailey* contained materially different language than found in the state provision. *Gale v. State*, 998 S.W.2d 221, 225 (Tex.Crim.App.1999). The reasoning in *Gale* applies equally to the case before us.

However, *Patterson* and *Gale* do not, by themselves, resolve the case before us. Those cases involved objects that were admittedly deadly weapons, and the issue posed was whether such objects were "used or exhibited" in the criminal transaction. In the present case, the question first arises: Could the object (the butcher knife) be a deadly weapon under the facts of the case? If that question is answered in the affirmative, then we would have occasion to ascertain whether that object was used or exhibited during the offense.

▆ To begin with, we reject the SPA's contention that an object can be a deadly weapon under § 1.07(a)(17)(A) for reasons other than the object's physical characteristics. Subsection (A), by its clear language, describes a deadly weapon by its physical characteristics. The subsection first mentions "a firearm" as a deadly weapon. "Firearm" describes an object of certain physical characteristics, and the Legislature has dictated that such an object is a deadly weapon. The remaining phrase parallels the Legislature's obvious intention when it speaks of something that is *"designed, made, or adapted* for the purpose of inflicting death or serious bodily injury" (emphasis added). That three words are used in the statute ("designed," "made," and "adapted") instead of one emphasizes that a deadly weapon may come to possess its physical characteristics through a variety of methods. An object could be manufactured as a deadly weapon, an object could be assembled together with other objects in a physical form that would render it a deadly weapon, or an object could be modified from its original form in such a way as to render the object a deadly weapon.

To define a deadly weapon by a method other than the weapon's physical characteristics would require an evaluation of the weapon's usage in a particular instance. But the Legislature defined deadly weapons by usage in a different subsection, § 1.07(a)(17)(B). To import usage into subsection (A) would render subsection (B) meaningless.

▆ The SPA also contends that an object can, through its physical characteristics, have more than one purpose, one of which can be as a deadly weapon. Whatever the merits of that position, an object that has an obvious purpose apart from causing death or serious bodily injury cannot be a deadly weapon under subsection (A): the object must be *"manifestly* designed, made, or adapted for the purpose of inflicting death or serious bodily injury" (emphasis added). Hence, as we have explained in the past, "kitchen knives, utility knives, straight razors, and eating utensils are manifestly designed for other purposes and, consequently, do not qualify as deadly weapons" under subsection (A). *Thomas*

*v. State,* 821 S.W.2d 616, 620 (Tex.Crim. App.1991). Butcher knives, having an obvious purpose apart from inflicting death or serious bodily injury, would also appear to be excluded from the subsection (A) category of objects that are deadly weapons due to their physical characteristics.

■ Nevertheless, we agree with the SPA's contention that objects used to threaten deadly force are in fact deadly weapons. The statute does not say "anything that in the manner of its use or intended use causes death or serious bodily injury." Instead the statute provides that a deadly weapon is "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." § 1.07(a)(17)(B) (emphasis added). The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force. *See Tisdale v. State,* 686 S.W.2d 110, 114–115 (Tex.Crim.App. 1984). *Thomas* contains language that is somewhat misleading when it states that certain objects are not deadly weapons "unless actually used or intended to be used in such a way as to cause death or serious bodily injury within the meaning of Section 1.07(a)(11)(B)." 821 S.W.2d at 620. But a closer reading of the opinion shows that the Court was simply making a shorthand reference to subsection (B)'s requirement while the Court focused upon the applicability of subsection (A). The modifying phrase "within the meaning of Section 1.07(a)(11)(B)" requires us to refer back to the statutory text to determine the full meaning of that passage. A subsequent paragraph in the opinion rectifies this omission by including the word "capable" in its discussion. 821 S.W.2d at 620.[4]

■ For legal sufficiency purposes, the question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). Given the foregoing discussion, the mere carrying of a butcher knife during such a violent attack as occurred in the present case was legally sufficient for a factfinder to conclude that the "intended use" for the knife was that it be capable of causing death or serious bodily injury. Hence, the evidence was legally sufficient to show that the butcher knife was a deadly weapon under the circumstances. The remaining question, then, is whether the butcher knife was "used or exhibited" during the criminal transaction. Had the knife been completely concealed by appellant's clothing, additional facts would have been needed to establish that the butcher knife was used. But the knife was partially exposed, and from that exposure, the factfinder could rationally conclude that the knife was exhibited during the criminal transaction, or at least, that its presence was used by appellant to instill in the complainant apprehension, reducing the likelihood of resistance during the encounter.

We are not equating mere possession with "use or exhibit" under Texas Penal Code § 29.03(a)(2). Rather, the determining factor is that the deadly weapon was "used" *in facilitating* the underlying crime. *See Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim.App.1989).

4. The quotation explains that the State need not show usage because it had proven the object to be a deadly weapon by design: "And because the State is not required to show that a knife of this kind was actually used or intended to be used in a manner *capable* of causing death or serious bodily injury, failure of the State to prove actual or intended use does not end the inquiry on appeal." *Id.* (emphasis added).

The judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

MEYERS, J., concurred in the result.