# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00162-CR

**Caleb Thompson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 9034174, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Caleb Thompson guilty of injury to a child and aggravated assault and imposed two fourteen-year prison terms. *See* Tex. Pen. Code Ann. §§ 22.02, 22.04 (West Supp. 2005). In two points of error, appellant contends the trial court erred by failing to instruct the jury on the lesser included offense of reckless injury to a child, and by failing to require a culpable mental state with respect to the use of a deadly weapon in the aggravated assault offense. We will overrule these points and affirm the convictions.

### *Background*

Appellant's father, Hank Thompson, was the pastor at Capitol City Baptist Church in Austin. Appellant's twin brother, Joshua Thompson, was the associate pastor in charge of the church's Spanish-speaking ministry. Appellant did maintenance work around the church and was

active in its programs. The brothers were twenty-two years old. The complainant, L.G., attended the church with his stepfather, mother, and sister. L.G. was eleven years old.

On the morning of July 3, 2002, L.G. was taking part in a children's Bible-study program at the church. His teacher, believing that he was misbehaving, reported him to Joshua. After a brief meeting with L.G. at the church, Joshua drove the boy to appellant's nearby residence. The child testified that after they arrived, he waited in the living room while Joshua went outside and cut a branch from a tree. When Joshua returned, he took L.G. to a bedroom, directed him to lie across the bed, and began to hit him across the back with the branch. L.G. testified that he cried out, tried to turn away from the blows, and begged Joshua to stop hitting him. Joshua told the boy to stop squirming and continued to hit him. When the boy began to cry, Joshua turned on a radio and turned up the volume.

L.G. testified that Joshua eventually went to the telephone and called appellant for assistance. Other testimony, including that of appellant and Joshua, was to the effect that appellant had been at the church and had gone to the house with Joshua and L.G. In either event, appellant entered the bedroom and held L.G.'s arms to prevent him from moving or deflecting Joshua's blows. L.G. said that Joshua continued to hit him until the branch he was using was shredded. Joshua ordered the boy to pick up the pieces of the stick and take them to the trash can. L.G.'s nose was bleeding, and when he returned to the bedroom, appellant and Joshua were cleaning blood from the carpet.

L.G. followed Joshua back to the living room. He testified that he was having difficulty standing and that his vision was blurred. Joshua went outside and cut another branch.

2

Joshua and appellant then returned the boy to the bedroom and the beating continued. This time, Joshua sat on L.G.'s legs as he hit him. Appellant continued to hold the boy's arms. L.G. estimated that Joshua struck him more than one hundred times over a period of one to one-and-a-half hours. L.G. testified that Joshua was praying "to get the devil out of me" as he beat him.

L.G.'s parents worked cleaning houses, and had gone to work that morning after dropping off their children at the church. L.G.'s stepfather testified that shortly after 11:00 a.m., he received a telephone call from Joshua, who said that "he had a big problem that he wasn't able to fix." L.G.'s parents returned home, where they found appellant's car sitting in the driveway. Joshua got out of the car and told L.G.'s stepfather that he "tried to get the devil out, but he wasn't able to." The stepfather testified that Joshua advised him to hit his son for two more hours. Joshua then went to the car, opened the door, and pulled out L.G. The boy was unable to stand, but Joshua said that the child was "faking it." The witness helped his son into the house as appellant and Joshua quickly drove away.

L.G. told his parents that Joshua and appellant had hit him on the back. His stepfather testified that when they lifted the boy's shirt to look, they saw "something horrendous" and his wife began to scream. They immediately called the police and EMS.

Austin firefighter Tim Bailey was the first emergency worker to arrive at the house. Paramedic Randy Trinkle arrived a few minutes later. Both men testified that when they saw L.G.'s back, they involuntarily exclaimed, "Oh, my God." Trinkle testified that the child's back, from his neck to his buttocks, was one huge bruise. It was the worst bruising he had ever seen. L.G.'s blood

3

pressure was low, his heart rate was fast, and he appeared to be undergoing hypovolemic shock, an indication that he was losing blood.

L.G. was taken to the emergency room and then to intensive care, where he remained for five days. His attending physician was Renee Jankowski. She testified that L.G.'s "back was almost one confluent sheet of bruising and superficial scratches that were oozing a little bit of blood. The bruising was quite severe and what we call palpable—it was raised up—which tells you that there is a lot of tissue edema underneath and suggests that there is deeper tissue injury." Jankowski testified that L.G.'s urine was "coca-cola colored," which indicated to her that the blood contained myoglobin, a sign of muscle necrosis. She explained that muscle cells release myoglobin when they die as a result of trauma. This substance collects in the kidneys and can cause renal failure.

Jankowski testified that L.G. had bruises on his back, buttocks, and legs that were equally fresh. All the wounds had a linear pattern. She was of the opinion that the boy had been beaten with a long, thin object hundreds of times. She said that if L.G. had not received prompt medical attention, he would have died from renal failure.

Joshua Thompson testified that he had been given permission by L.G.'s parents to physically discipline him. He said that he and appellant took the boy to appellant's house because corporal punishment was against church policy. Joshua denied hitting L.G. for an hour; he estimated that the beating lasted for about ten minutes. He did not know how many times he struck the child, but denied that it was a hundred or more. He also denied using more than one "switch," but admitted hitting the boy "very hard." He said that he "felt it was wrong" at the time, but that he believed it was necessary discipline. He conceded that in retrospect, it was a "terrible, terrible idea."

4

Appellant testified that Joshua told him that "he was going to discipline a child" and needed a witness. He thought this meant that Joshua was going to spank the child on the buttocks. He claimed to be surprised when Joshua began hitting L.G. on the back. Appellant admitted holding the boy's arms, saying that he just "froze" as the beating continued. He estimated that Joshua struck the boy about twenty-five times. He acknowledged that Joshua's conduct was inappropriate, excessive, and brutal.

Appellant and Joshua Thompson were indicted for injury to a child and aggravated assault, and they were convicted following a joint trial.[1] The court's charge authorized appellant's convictions as a party to Joshua's conduct. *See* Tex. Pen. Code Ann. § 7.02 (West 2003).

### *Lesser Included Offense*

Count one of the indictment alleged that appellant "intentionally and knowingly cause[d] serious bodily injury to [L.G.], a child 14 years of age or younger, by striking [him] with a stick, a branch and an object unknown." *See* Tex. Pen. Code Ann. § 22.04(a)(1), (e). Pursuant to the law of parties, the court's charge authorized appellant's conviction if the jury found that Joshua Thompson intentionally or knowingly caused serious bodily injury to L.G. as alleged and that appellant, "with the intent to promote or assist in the commission of the aforesaid offense . . . did aid or assist in the commission of the offense by holding [L.G.'s] hand, wrists, or arms." *See* Tex. Pen. Code Ann. § 7.02(a)(2).

---

[1] We affirm Joshua Thompson's convictions in *Thompson v. State*, No. 03-04-00161-CR (Tex. App.—Austin, Dec. 8, 2005, no pet. h.).

5

Joshua Thompson requested an instruction on the lesser included offense of reckless injury to a child. Appellant was allowed to join this request and in his first point of error, appellant asserts that the trial court erred by refusing the instruction. But appellant's argument on appeal does not comport with the trial request, that is, he does not argue that the court should have authorized his conviction as a party to *Joshua's* reckless conduct. Instead, appellant argues that the evidence raises an issue as to whether *he* recklessly injured L.G. This argument ignores the fact that there is no evidence that appellant struck L.G., recklessly or otherwise, and the court's charge did not authorize his conviction on a theory that he did so.

Under the law of parties, a person cannot recklessly aid or assist another in the commission of an offense. Instead, the person must act "with intent to promote or assist the commission of the offense." *Id*. The court's charge properly required the jury to find that appellant aided or assisted Joshua's criminal conduct with the intent to promote or assist the commission of the charged offense, and it would have been error to instruct the jury otherwise. Point of error one is overruled.

### *Deadly Weapon*

Count two of the indictment alleged that appellant "intentionally and knowingly cause[d] bodily injury to [L.G.], by striking [him] with a stick, a branch and an object unknown . . . and . . . did then and there use and exhibit a deadly weapon, to-wit: a stick, a branch and an object unknown." *See* Tex. Pen. Code Ann. § 22.02(a)(2). Pursuant to the law of parties, the court's charge authorized appellant's conviction if the jury found that Joshua Thompson intentionally or knowingly

caused bodily injury to L.G. as alleged, that Joshua used or exhibited a deadly weapon, and that appellant, "with the intent to promote or assist in the commission of the aforesaid offense . . . did aid or assist in the commission of the offense by holding [L.G.'s] hand, wrists, or arms." *See* Tex. Pen. Code Ann. § 7.02(a)(2).

In his second point of error, appellant contends that this instruction was fundamentally erroneous because it did not require a culpable mental state with respect to the weapon's use. Once again, appellant's argument does not take into account that he was convicted as a party. It is unclear whether the culpable mental state he contends should have been required was his own or Joshua's.

For the reasons stated previously, there was no error in the court's charge with regard to appellant's culpability as a party to the aggravated assault. If appellant is arguing that the court should have required the jury to find that Joshua Thompson employed the stick, branch, or other object with the intent to cause death or serious bodily injury, the argument is without merit. "[A]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury" is a deadly weapon. Tex. Pen. Code Ann. § 1.07(a)(17)(B) (West Supp. 2005). The statute does not require that the actor actually intend death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). It is sufficient that the actor uses or intends to use the object in a manner capable of causing death or serious bodily injury. *Id*.; *and see Bailey v. State*, 38 S.W.3d 157, 159 (Tex. Crim. App. 2001). There was no error in the charge. Point of error two is overruled.

The judgments of conviction are affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryeaer

Affirmed

Filed:   December 8, 2005

Do Not Publish