# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00382-CR

**Steven Anthony Johnson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 58968, HONORABLE WILLIAM BACHUS JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Steven Anthony Johnson of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2003). The court assessed punishment, enhanced by two previous felony offenses, at twenty-five years in prison. By two points of error, appellant contends the evidence is not sufficient to sustain the guilty verdict and that the prosecutor made an improper argument to the jury. We will overrule both points and affirm the conviction.

The complaining witness, Rhonda Mays, testified that on the day in question she was employed by a landscaping company in Killeen. The business was located in a converted one-bedroom apartment. The front room had been divided by shelving into a small lobby and an office where Mays's desk was located. The back room contained supplies and another desk with the cash register. There was a back door leading from that room to the area where plants were kept.

Around noon, Mays heard noises that got progressively louder, then she heard the cash register open.  She stood and looked around the corner into the back room.  She "saw the back door open and [appellant] stand[ing] there with the register open.  He had a knife in the right hand and the money in the left, and he was just standing there."  Mays described the knife as old and "dingy like"; the blade was "jagged," or serrated.  After Mays and appellant stared at each other for a moment, she demanded to know what he was doing.  Appellant said, "I'm looking for a handout."  Mays told him that he could not just take money and asked him to leave.  "And he just kind of looked at me kind of puzzled, and then he kind of made a step like to come around the counter.  So I was like, 'Oh, great, he's going to come after me . . . .'  But he didn't.  He put the money down.  He tapped it with a knife and he left."

Mays rushed to the back door and locked it, then she did the same to the front door.  As she called 911, she heard "stuff being knocked over" outside.  Then she saw appellant walk from behind the building and get into a vehicle occupied by another man.  As the two men slowly pulled away, Mays gave the license number of the vehicle to the 911 operator.

Mays agreed that she was much more agitated during her call to 911 than she was in court.  The recording of Mays's call to 911 and a transcription of the recording were admitted in evidence.  In the transcription, Mays described the robbery to the operator as follows:

> I was in my office and this guy just walked in and I heard my register open and he is high his eyes are huge he was shaking he was waiving a knife at me he says I need a helping hand I said what the hell are you doing and I said get out of here I shut the door and put the bar on the door and there was another black guy he was just sitting there and they're stealing stuff out of the door I just got it all locked up.

2

Appellant was not carrying a knife when he was arrested and no weapon was introduced at the trial. Mays attempted to draw a picture of the knife during her testimony, but the drawing was not introduced in evidence and is not in the record.

Officer Antonio McDaniel was the first officer to arrive in response to Mays's call. He testified that he found Mays "trembling" and "frantic." McDaniel said that a knife with a two or three inch blade can cause serious bodily injury or death. He said that police officers are trained to defend against a person with an "edged weapon" if that person comes within twenty-one feet. McDaniel also testified that the cash register appeared to have been forced open.

Following his arrest, appellant gave a written statement admitting that he entered the office, opened the register, and removed money. He denied having a knife or any other weapon. He said the man with him in the car had nothing to do with the crime. Appellant also testified to the same effect.

In his first point of error, appellant contends the evidence is legally insufficient to support a finding beyond a reasonable doubt that he used or exhibited a deadly weapon during the course of the robbery. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (standard of review); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (same). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19).

3

Appellant does not seriously dispute that the evidence supports a finding that he was carrying a knife when the robbery was committed. Mays testified that appellant was holding a knife, which she described, and the jury was free to disbelieve appellant's testimony denying that he was armed. The more serious issue is whether the evidence supports a finding that the knife was shown to be capable of causing death or serious bodily injury in the manner of its use or intended use. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2006) (defining "deadly weapon").

It is not necessary that a weapon be introduced in evidence for it to be found to be deadly. *Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982). There is also no requirement that an injury actually be inflicted. *Ford v. State*, 828 S.W.2d 525, 527 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). In fact, under section 1.07(a)(17)(B), it is not even necessary that the actor actually intended to cause death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). It is sufficient that the actor is shown to have intended a use of the weapon in which it would be capable of causing death or serious bodily injury. *Id*. In *McCain*, a prosecution for aggravated robbery, the defendant broke into the complainant's residence and hit her numerous times with his fist. *Id*. at 499. During the attack, the complainant saw a long, dark object partly sticking out of the defendant's back pocket, and the defendant was carrying a nine-inch butcher knife when he was arrested. *Id*. Even though there was no evidence that the defendant brandished or displayed the knife, the court held that the evidence was sufficient to support a finding that he intended to use the knife in a manner capable of causing death or serious bodily injury. *Id*. at 503.

4

The evidence before us is not as definitive as in *McCain*. There is no evidence that appellant ever touched Mays, much less inflicted physical injury. Nor is there any evidence that appellant expressly threatened to kill or injure Mays, which distinguishes this case from *Herring v. State*, 202 S.W.3d 764, 765-66 (Tex. Crim. App. 2006), also cited by the State. In *Herring*, the defendant told the robbery victim that he had a knife and would kill him if he did not give him money. *Id*. at 765. The court held that this was sufficient to support a finding that the defendant used a deadly weapon even though the complainant never saw the knife. *Id*. at 766.

The evidence in the instant cause supports a finding that appellant was carrying a knife large enough to force open the cash register. When confronted by Mays, appellant had the knife in his hand and, according to Mays's statement to the 911 operator, "waived" it at her. The fear and agitation that appellant's conduct instilled in Mays is evident from the 911 call and from McDaniel's testimony. From this evidence, the jury could rationally infer that appellant used the knife to threaten deadly force, instill apprehension in the complainant, and facilitate his escape. *See McCain*, 22 S.W.3d at 503. We hold that the jury could reasonably find beyond a reasonable doubt that appellant intended to use the knife in a manner in which it would be capable of causing death or serious bodily injury. Point of error one is overruled.

In his second point of error, appellant urges that the prosecutor, during final argument, improperly encouraged the jury to speculate about why a witness did not testify for the defense. The witness in question was the unidentified man who was seen leaving the scene of the robbery with appellant. Appellant testified that he did not know the man's name or his location at the time of trial. He said that he had given the police the address where he met the man and the man's motel room

number, and even drew them a map. Officer Lloyd Herbert testified, to the contrary, that appellant gave the police no specific information regarding the man, but only a general location and the name of a motel.

During his own argument to the jury, defense counsel said, "There [were] only two people there—Ms. Mays and Steven. There was this other gentleman in the pickup, in the Jeep, but he was just, you know, just there. Other than the knife, everything Ms. Mays has said and Steven has said I have been able to confirm. Ms. Mays says there was a knife, Steven says there was not a knife." In response, the prosecutor argued, "Both sides in any case can subpoena witnesses and bring them to you. Don't you think that if that other guy in the car wasn't harmful that Mr. Johnson would have made sure the police could have talked to him, or his own lawyer could get him here, or somebody could find him?" Appellant objected, "There is testimony that we don't even know that guy's name, we don't know where he lives." The prosecutor responded, "This is argument, Your Honor." The court ruled, "All right, I will overrule. I will overrule the objection. Go ahead." The prosecutor continued, "He told you there is a room number. Detective Herbert told you, no, he didn't give me that."

During argument, counsel may summarize the evidence, draw reasonable deductions from the evidence, and answer the arguments of opposing counsel. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). In this case, it was undisputed that another man had been with appellant at the time of the robbery, and it is reasonable to infer that this man could have testified as to whether appellant had been armed with a knife. There was conflicting testimony regarding appellant's efforts to help the police find this man, whose name appellant claimed not to know. In

6

response to defense counsel's argument regarding the presence of a knife, the prosecutor could properly draw the jury's attention to the officer's testimony that appellant had not been as forthcoming about the unidentified man as he had claimed during his own testimony. From this, the prosecutor could reasonably suggest that appellant knew more about the man than he was willing to admit and could have secured the man's presence at trial through reasonable diligence. *See Rodgers v. State*, 486 S.W.2d 794, 797 (Tex. Crim. App. 1972). Point of error two is overruled.

The judgment of conviction is affirmed.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed:   August 30, 2007

Do Not Publish