NO. 07-11-0255-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 26, 2012

ANTHONY CHARLES FOSTER, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 18,072-A; HONORABLE HAL MINER, PRESIDING

*Memorandum Opinion*

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Anthony Charles Foster, Jr., challenges the sufficiency of the evidence to support the trial court's finding that he used or exhibited a deadly weapon while committing aggravated robbery.[1]  He now asks us to determine whether the affirmative finding had sufficient evidentiary support.  We affirm.

_____

[1]Appellant had pled guilty to robbery but not to the use of a deadly weapon.  The latter issue was tried to the court.

Before pleading guilty to robbery, appellant judicially confessed, via writing, "to committing the offense of Aggravated Robbery *exactly* as charged in the indictment or information." (Emphasis added). The charge in the indictment stated that Foster, the defendant, "did then and there, while in the course of committing theft of property and with intent to obtain and maintain control of said property, intentionally and knowingly threaten[ed] and plac[ed] Daniel Bramblett in fear of imminent bodily injury and death, and the defendant did then and there intentionally and knowingly *use and exhibit a deadly weapon*, *namely, a firearm.*" (Emphasis added). Next, in deciding whether to accept appellant's plea to robbery, the trial judge asked appellant, "did you take a BB pistol in there and hold it up and take money from Daniel Bramblett in that same Hollywood Video?" To that question, appellant answered: "Yes, Your Honor."

Additionally, the store clerk victimized by appellant testified that appellant pointed the BB gun "towards" his (the clerk's) legs and directed him to "get in the office" and "get down and nobody will be hurt." The employee was also informed by appellant that he "was there to rob the store and not hurt anybody."

According to a police officer, the BB guns "look[ed] exactly like a handgun." He further testified that they could cause serious bodily injury if pointed at someone and fired and that "in the manner of their intended use, which is to project a BB out of the weapon, it is capable of causing . . . serious bodily injury."

The foregoing recitation discloses the presence of some evidence upon which a rational factfinder could reasonably infer beyond reasonable doubt that BB guns were used by appellant and another during the robbery and that they were deadly weapons. *See* TEX. PENAL CODE ANN. §1.07(a)(17)(A) & (B) (West Supp. 2011) (defining a deadly

2

weapon as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of doing the same).  Contrary to appellant's argument, the State need not have proved that a projectile could have been discharged from the weapon at the time of the crime.  *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) (stating that whether the BB gun was loaded or unloaded at the time is not significant).  Testimony that such a weapon is "capable of causing serious bodily injury" is enough for a jury to "make a deadly weapon finding," according to the Court of Criminal Appeals, and we have that here.  *Id.*

Nor is it of import that appellant said he was there to rob the store, but not to hurt people.  As stated by the Court of Criminal Appeals in *McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000), "objects used to threaten deadly force are in fact deadly weapons."  *Id.* at 503.  Indeed, by placing the word "capable" in the definition of deadly weapon, the legislature intended the provision "to cover conduct that threatens deadly force, *even if the actor has no intention of actually using deadly force.*"  *Id.*  So, it may well be that the appellant here never intended to hurt anyone; that alone does not bar the BB gun from being a deadly weapon.  It was enough if his conduct could be reasonably interpreted as threatening the use of a deadly weapon, and that inference could be made from the evidence here.  Evidence revealed that the BB guns used by appellant looked like actual firearms.  Furthermore, those weapons were pointed "towards" the store clerk at the same time appellant admonished the victim to cooperate to avoid injury.  From an assailant displaying what appears to be an actual firearm, directing it towards others, and ordering them to comply with his demands to avoid

3

being hurt, a rational factfinder can legitimately infer that he was threatening the use of deadly force.

In sum, and even if appellant had not signed a judicial confession admitting that he committed robbery with a deadly weapon, the evidence is more than ample to support the deadly weapon finding made here. Accordingly, we affirm the trial court's judgment.


Brian Quinn
Chief Justice

Do not publish.