

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00550-CR
### NO. 02-12-00551-CR

---

ELPIDIO MOLINA A/K/A PEDRO           APPELLANT
GONZALEZ AGUILAR

V.

THE STATE OF TEXAS          STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Upon the guilty pleas of Appellant Elpidio Molina, also known as Pedro Gonzalez Aguilar, and after a trial on whether a deadly weapon was used and on punishment, the trial court convicted Appellant of one count of possession of four or more but less than 200 grams of methamphetamine with intent to deliver and

---

[1]*See* Tex. R. App. P. 47.4.

one count of possession of 200 or more but less than 400 grams of cocaine, entered deadly weapon findings in each case, and sentenced Appellant to fifteen years' confinement in each case, with the sentences to run concurrently. In one issue, Appellant contends that the evidence is insufficient to support the deadly weapon findings. Because we hold that the evidence is sufficient to support the deadly weapon findings, we affirm the trial court's judgments.

The police arrested Appellant after an undercover drug buy outside a grocery store. Appellant sold the undercover officer 139.76 grams of cocaine. After Appellant's arrest, the police found $3,069 on his person but no weapons.

Also after Appellant's arrest, the police searched his home pursuant to a warrant. In the home the police found 78.57 grams of cocaine, 23.15 grams of methamphetamine, scales, baggies, and pipes. They also found a shotgun, shotgun shells, a handgun, and a single bullet. The shotgun was found in Appellant's stepdaughter's closet. The handgun was found behind the washing machine. The bullet was found in a drawer along with a truck title.

A grand jury indicted Appellant on one count of possession of four or more but less than 200 grams of methamphetamine with intent to deliver and one count of simple possession of that same amount of methamphetamine. A grand jury also indicted Appellant on one count of possession of 200 or more but less than 400 grams of cocaine with intent to deliver and one count of simple possession of that same amount of cocaine. Appellant pled guilty to the

methamphetamine delivery count and to the cocaine possession count. The State waived the cocaine delivery count.

Appellant apparently entered a plea of "not true" to the deadly weapon allegations at the original plea hearing. We do not have a reporter's record of that hearing. The trial court deferred finding Appellant guilty pending a presentence investigation. After the presentence investigation report (PSI) was completed, the issues of punishment and whether Appellant used a deadly weapon were submitted to the trial court.

At the trial on punishment and the deadly weapon issue, the trial court admitted the PSI at the State's request and also admitted thirty-two photographs offered by the State with no objection by Appellant. The State then rested but cross-examined Appellant's witnesses.

Destiny, one of Appellant's two adult stepdaughters, testified that Appellant would buy cars at auctions, have them repaired, and resell them to make money. She also testified that he and her mother had lived in the home "maybe like a week" but not "that long" before his arrest and that they were still unpacking when he was arrested. She further testified that everything had been moved to the new house from the family's former apartment.

Destiny stated that she had never seen Appellant with a weapon and that she had no knowledge of any weapons in the home. She admitted that she did not live in the home until after Appellant's arrest for these offenses, but she

3

further stated that Appellant's son had lived in the home a short while before the arrest but had moved to Mexico.

In an unidentified State's exhibit that the prosecutor showed her, Destiny identified a bedroom table that she claimed was from the master bedroom where Appellant slept. She did not know what the baggie on the table was for. Destiny admitted that State's Exhibit 3, a photograph of what appears to be a drawer, contained a truck title and a bullet. That exhibit was not further described in evidence. Destiny further admitted that State's Exhibit 4 was a photograph of a box containing baggies and that State's Exhibit 5 depicted more baggies. Destiny recognized the scale depicted in State's Exhibit 6 but did not know where it normally set in the house. Destiny confirmed that State's Exhibit 7 was a photograph of another bedroom table and that lying on the bedroom table were pills, baggies, and a container bearing a Pringles label but that was actually used to hide items. She identified the item featured in State's Exhibit 8 as that container but said that she had never seen it before. She testified that the can in the picture contained "baggies with some white stuff in it." Destiny identified State's Exhibit 10 as a photograph of a tub containing baggies and State's Exhibit 11 as a close-up view of those baggies.

Destiny identified State's Exhibits 12 and 13 as pictures of a shotgun. She said that the shotgun belonged to her sister's friend and that Appellant did not know that the shotgun was in the home. Destiny denied ever having seen the container depicted in State's Exhibits 14 and 15 that bore a Lipton tea label or

4

the container depicted in State's Exhibit 16 that looked like a salt container but actually held a plastic baggie and a substance that to Destiny looked like cocaine. Destiny recognized the kitchen utensil holder displayed in State's Exhibit 18 and identified pipes stuffed down in it but testified that she had never seen the pipes before. Destiny identified State's Exhibit 21 as a picture of a container with an Arizona Tea label from the refrigerator and admitted that the contents looked not like tea but cocaine and that the family had moved the refrigerator from their apartment to the house.

In State's Exhibit 23, Destiny identified what looked like small wallets found in the home but stated that she had never seen them. In State's Exhibit 25, Destiny identified a picture of Appellant with his other name on it, Elpidio Molina. In State's Exhibit 28, Destiny identified the man pictured in the identification card as Appellant but admitted that the card listed Elpidio Molina Vargas as his name, not the name by which she had known him before his arrest.

In State's Exhibit 26, Destiny identified the washing machine, which was at the house when the family moved in. In State's Exhibits 26 and 27, she also identified the handgun found behind the washing machine. Destiny testified that she had never seen the gun before and that she did not know that her mother and Appellant had the gun in the home. She further stated that she had never seen her mother with the handgun and that she thought it was her stepbrother's.

Destiny denied any knowledge of Appellant making a living by selling drugs, denied meeting men that he identified in his PSI as others in the drug

trade, and denied ever having driven him to a meeting where money or "suspicious stuff" changed hands.

Appellant's other adult stepdaughter, Mercedes, testified that the family had lived in the house about a month, not a week, before the arrest. She also stated that the police had found the shotgun in her bedroom closet, that the shotgun belonged to her friend, that she had asked to borrow it after a robbery, and that she snuck it into the house through her back window without telling anyone.

Mercedes further testified that the handgun belonged to her stepbrother, Daniel. She had not realized that Daniel had left the handgun at the house when he moved. Mercedes denied ever having seen Appellant or her mother with a handgun.

Mercedes testified that she never went with Appellant to a meeting where he exchanged anything with anybody. But she admitted that she was arrested on the same day as Appellant when she drove through the same grocery store parking lot at nearly the same time as his arrest. She denied that she was helping him or acting as his lookout.

Appellant admitted to the community supervision officer who prepared the PSI in this case that he had been selling drugs for six months before his arrest because he needed the money and that he occasionally sold drugs from his home. He denied any knowledge of the guns and ammunition found by the police. He stated that he suspected that the shotgun and shells belonged to

6

Mercedes's boyfriend because they were found in her room and that the handgun belonged to his son who had moved to Mexico.

In his sole issue, Appellant contends that the evidence is insufficient to support the deadly weapon finding. We measure the sufficiency of the evidence supporting a deadly weapon finding under the standard of *Jackson v. Virginia.*[2] In our due-process review of the sufficiency of the evidence to support a deadly weapon finding, we view all of the evidence in the light most favorable to the finding to determine whether any rational trier of fact could have found the essential elements of the deadly weapon finding beyond a reasonable doubt.[3] "The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness'[s] testimony."[4]

For evidence to be legally sufficient to support a deadly weapon finding, "the evidence must demonstrate that . . . the object meets the statutory definition of a dangerous weapon, [that] the deadly weapon was used or exhibited 'during the transaction from which' the felony conviction was obtained, and . . . that other people were put in actual danger."[5] Because firearms are deadly weapons per

---

[2]443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *McCain*, 22 S.W.3d at 503.

[4]*Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984).

[5]*Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (citations omitted).

se,[6] "[t]he real question is whether the weapons are found to have facilitated Appellant's possession and intended distribution of the drugs."[7]

The trial court was free to disbelieve all or part of the stepdaughters' testimony as well as all or part of the statements Appellant made in the PSI. Similar to the home in *Coleman*, which was "littered with illicit drug manufacturing material, wholesale drug material, retail drug items, and a 'cash register' safe in the bedroom[,]"[8] Appellant's home contained cocaine in various places, baggies all over, containers in which to store and hide drugs, scales, pipes, a wad of cash, and many wallets. The police found the handgun behind the washing machine, accessible to Appellant, and the shotgun was found in the closet of the stepdaughter arrested at nearly the same time and in the same grocery store parking lot (but different vehicle) as Appellant. We therefore hold that the evidence sufficiently supports the conclusion that the guns facilitated Appellant's possession and distribution of the methamphetamine and cocaine and therefore sufficiently supports the deadly weapon findings.

We accordingly overrule Appellant's sole issue and affirm the trial court's judgments.

---

[6]Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2013).

[7]*Coleman v. State*, 145 S.W.3d 649, 655 (Tex. Crim. App. 2004).

[8]*Id.* at 657 (Cochran, J., concurring).

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 20, 2014