**Affirmed and Opinion Filed May 20, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01161-CR

**ELOY SANCHEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F08-24673-L**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Bridges

Eloy Sanchez appeals his reckless injury to a child conviction. Appellant pleaded no contest, and the trial court found him guilty and assessed punishment at ten years' confinement and a $2000 fine. In three points of error, appellant argues the evidence is insufficient to prove he recklessly caused serious bodily injury to a child or used or exhibited a deadly weapon, and he was denied his right to confrontation when the State introduced an autopsy report containing testimonial hearsay. We affirm the trial court's judgment.

Erica Santiago and appellant met in high school and had a baby, Lanah, in January 2008. At the time, Santiago and appellant lived with Santiago's mother in Garland. On March 29, 2008, Lanah was approximately two months old. That day, Santiago was trying to put Lanah to sleep so she could get ready for work, but Lanah was crying. Appellant was watching television,

and he told Santiago "if [she] could go put her to sleep somewhere else because he was trying to watch TV." As Lanah continued crying, appellant turned up the volume on the television, and Santiago took Lanah to "the front" to put her to sleep. Santiago "had a hard time putting [Lanah] down because she didn't really want [Santiago] to put her down." When appellant drove Santiago to work, they took Lanah along in her carseat. As Santiago got out of the car, she reminded appellant to feed Lanah. At that time, Lanah had no bruises.

At work, Santiago got a text from her mother saying Lanah was crying and Santiago's mother was on her way home to help. Santiago called her mother's house phone, and her mother answered and said she "had just barely gotten home." Santiago asked to talk to appellant, and she heard appellant say "She's not breathing." Santiago hung up the phone "so they could call the ambulance" and had a co-worker drive her home. When Santiago arrived home, police and an ambulance were already there, and they would not let her enter the house. However, Santiago was able to talk to appellant, who was "pretty calm for the situation." Santiago asked appellant, "What happened? What did you do?" and appellant said Lanah "choked on her milk."

Santiago saw Lanah taken out of the house and placed in an ambulance, and Santiago's co-worker drove her to the hospital. Other family members and appellant were also at the hospital. Doctors spoke with Santiago and told her Lanah was not going to survive. Santiago stayed with appellant and his family because she "didn't want to go anywhere near [her] room because that's where it happened." Santiago stayed with appellant for "about a month and a half" after Lanah's death. Santiago continued to ask appellant what happened, and he said "he didn't know, he thought she was asleep, and when he turned around, that she had changed colors, and she looked like she wasn't breathing." Santiago trusted appellant and believed Lanah had choked on her milk. However, after Lanah died, appellant's "temperament changed a lot."

Appellant "was very aggressive" and "got mad very easy." If Santiago brought up Lanah, appellant "would get very angry."

When the medical examiner's findings came out concerning Lanah's death, the report indicated Lanah died as a result of homicidal violence, including blunt force injuries. Garland police detective R.T. Schaum obtained a warrant for appellant's arrest. After appellant was arrested, Schaum interviewed appellant. Appellant gave a written statement in which he described setting an alarm for Lanah's five o'clock feeding. When the alarm went off, Lanah was crying. It was time to feed Lanah, so appellant "got fustread [sic] then [he] shuck [sic] her for 10 seconds or 5 seconds." Appellant then got the bottle ready and Lanah "ate the milk." Appellant put Lanah to sleep and was watching TV when he heard Lanah cough. He went to look at her, and she was "turning Pell [sic]," so he called "Frances" who came running and screaming and that was "when they call [sic] 911."

Appellant was indicted on a charge of intentionally or knowingly causing serious injury to a child by shaking Lanah with his hands and by asphyxiating her with his hands and an unknown object and by a manner and means unknown to the grand jury. Appellant waived his right to a jury trial and entered a plea of no contest.

At trial, medical examiner Dr. Keith Pinckard testified Lanah had "a couple of injuries on the face," including a bruise on the left cheek and a "small abrasion, superficial laceration" just below the lower lip. When the scalp was peeled back, it showed "a focus of hemorrhage or contusion over the back of the head." There was also "a focus of hemorrhage or bleeding over some of the muscles here in the front of the neck." The bleeding was "over where the windpipe would be." Lanah's left third through eighth ribs had "remote healing rib fractures" indicating the injuries occurred some time before and were in the process of healing. However, one rib had a "new fracture through the healing portion of the old fracture." A separate single rib fracture on

the right side also was healing.  Finally, Lanah had bruising in the soft tissue and muscles of the upper right arm.  Pinckard testified Lanah's rib fractures were consistent with somebody who was holding a baby "on the side with a squeezing type action."

Lanah's grandmother, Francis Hernandez, testified Santiago, appellant, Lanah, and Hernandez's daughter Christine were living with her on March 29, 2008.  Hernandez received a phone call and a text from Christine that made her concerned for Lanah and prompted her to return to her house.  When she came inside, the house was "very silent, very quiet," and Hernandez heard appellant say "the baby wasn't breathing."  Hernandez ran into the room where Lanah was lying on the bed.  Lanah was "completely purple," and Hernandez "knew she was gone."  Appellant showed "no emotion" and was "stand-offish."  Hernandez "started panicking," grabbed Lanah, and carried her to the front of the house where she put her on the couch and attempted to perform CPR.  Hernandez called 911, and police arrived "really fast."

The trial court found appellant guilty of the lesser included offense of recklessly causing serious bodily injury to a child, and this appeal followed.

In his first point of error, appellant argues the evidence is insufficient to prove he recklessly caused serious injury to Lanah.  In his second point of error, appellant argues the evidence is insufficient to prove he used or exhibited a deadly weapon as alleged in the indictment.  When a defendant waives his right to a jury trial and pleads no contest, the State need only introduce sufficient evidence to support the plea and establish the defendant's guilt. TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005); *see Wright v. State*, 930 S.W.2d 131, 132 (Tex. App.—Dallas 1996, no pet.).  The supporting evidence need not prove the defendant's guilt beyond a reasonable doubt.  *McGill v. State*, 200 S.W.3d 325, 330 (Tex. App.—Dallas 2006, no pet.); *see Ex parte Martin*, 747 S.W.2d 789, 791-92 (Tex. Crim. App. 1988) (op. on

reh'g). The evidence sufficiently supports a plea of no contest if it embraces every element of the offense charged. *Stone v. State*, 919 S.W.2d 424, 427 (Tex. Crim. App. 1996).

A person commits the offense of injury to a child if he, among other things, "intentionally, knowingly, recklessly, or with criminal negligence, by act" causes serious bodily injury or bodily injury to a child 14 years of age or younger. TEX. PENAL CODE ANN. § 22.04(a) (West Supp. 2013). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

Here, the evidence showed appellant admitted he shook Lanah for "10 seconds or 5 seconds." Lanah had "a couple of injuries on the face," including a bruise on the left cheek and a "small abrasion, superficial laceration" just below the lower lip. When Lanah's scalp was peeled back, it showed "a focus of hemorrhage or contusion over the back of the head." There was also "a focus of hemorrhage or bleeding over some of the muscles . . . in the front of the neck." The bleeding was in the area of the windpipe." Lanah's left third through eighth ribs had "remote healing rib fractures" indicating the injuries occurred some time before and were in the process of healing. However, one rib had a "new fracture through the healing portion of the old fracture." A separate single rib fracture on the right side also was healing. Finally, Lanah had

bruising in the soft tissue and muscles of the upper right arm. We conclude this evidence was sufficient to support appellant's plea and establish that he recklessly caused serious bodily injury to Lanah. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15; *Wright*, 930 S.W.2d at 132. We overrule appellant's first point of error.

Regarding the sufficiency of the evidence to support the trial court's finding appellant used a deadly weapon, a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(17)(B). While hands are not a deadly weapon per se, a factfinder may find that they were used as a deadly weapon based on their manner of use or intended use and their capacity to produce death or serious bodily injury. *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004). The State, however, need not show that the hands actually caused serious bodily injury or death, only that the hands in the manner of their use were capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Here, appellant admitted he shook Lanah, and her autopsy further showed bleeding under the scalp on the back of her head and over her windpipe. We conclude this evidence is sufficient to show appellant used a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(17)(B); *Wright*, 930 S.W.2d at 132.

To the extent appellant argues "[n]o deadly weapon was described or specified in the trial court's verdict because it was not proven," we disagree. An appellate court may examine the record to determine whether there is sufficient evidence to support a finding that an object was used as a deadly weapon in the case. *Whatley v. State*, 946 S.W.3d 73, 76 (Tex. Crim. App. 1997) (no items specifically named as deadly weapons in judgment, but deadly weapon finding nevertheless subject to appellate review for sufficiency purposes). As indicated above, the evidence is sufficient to show appellant used a deadly weapon. We overrule appellant's second point of error.

In his third point of error, appellant argues he was denied his right to confrontation under the Sixth Amendment when the State introduced the autopsy report which contained testimonial hearsay. Appellant argues Pinckard "did not perform the autopsy," and the admission of the autopsy report based on Pinckard's testimony violated "his right to confront the witnesses who were responsible for the production of the final product." In support of this argument, appellant cites *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011). In *Bullcoming*, a DWI case, after the defendant rear-ended another vehicle and failed field sobriety tests, the police obtained a warrant authorizing a blood test. *Id.* at 2710. At trial, the forensic lab report containing the results of the test was the principal evidence against the defendant. The prosecution did not call the analyst who signed and certified the report. Instead, they called another analyst who was familiar with the lab's testing procedures but had not participated in or observed the testing. *Id.* at 2712. The court held that the report contained a testimonial certification, and the defendant had a right to be confronted with the analyst who made the certification. *Id.* at 2716–17.

Here, the record contradicts appellant's argument that Pinckard "did not perform the autopsy." After appellant raised his *Bullcoming* objection at trial, Pinckard testified he was a medical examiner with five years of experience at the time of Lanah's autopsy. At the time of the autopsy, Pinckard's office had two Fellows undergoing their final year of training before they became medical examiners. One of the Fellows, Dr. Nicholas Batalis, "was the person who probably did most of the physical work during the autopsy, but he was doing it under [Pinckard's] direct supervision because he was . . . still in training and [Pinckard] was responsible for him." Pinckard testified he was the one "responsible for the report the death certificate and the whole case." At the time, Batalis could not sign off on the death certificate. Pinckard testified he was "there during the entire autopsy." Pinckard was "standing there watching [Batalis]," and they talked about what they saw during the autopsy. Batalis signed the

–7–

autopsy report, Pinckard signed the report, and then "everybody else in the office review[ed] it and sign[ed] it." Under these circumstances, we conclude Pinckard's testimony demonstrated he signed and certified the autopsy report after attending and participating in the autopsy. Appellant was therefore not denied his right to confrontation when the autopsy report was introduced pursuant to Pinckard's testimony. *See id.* at 2712–17. We overrule appellant's third point of error.

We affirm the trial court's judgment.


/David L. Bridges/

Do Not Publish
TEX. R. APP. P. 47

DAVID L. BRIDGES
JUSTICE

121161F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ELOY SANCHEZ, Appellant

No. 05-12-01161-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F08-24673-L.
Opinion delivered by Justice Bridges.
Justices Fillmore and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered May 20, 2014

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE