

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-09-084-CR

DONALD D. WALKER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

Appellant Donald D. Walker appeals his conviction for aggravated assault.[2] He contends in five issues that the evidence is legally and factually insufficient to sustain his conviction and that the trial court erred by admitting evidence of a prior guilty plea. We affirm.

## II. Procedural Background

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Penal Code Ann. §§ 22.01(a)(1), (2); 22.02(a)(2) (Vernon Supp. 2009).

A grand jury indicted Appellant on February 25, 2009. The indictment alleged that Appellant intentionally or knowingly caused bodily injury to Devona Harris by hitting her with his hand or a firearm, that he intentionally or knowingly threatened imminent bodily injury to Ms. Harris, and that he used or exhibited a deadly weapon, a firearm, during the commission of the assault. The indictment also alleged that Appellant, by hitting Ms. Harris with his hand or a firearm, intentionally or knowingly caused bodily injury to Ms. Harris, "a person whose relationship is, or whose association with [Appellant] has been, a continuing dating relationship of a romantic or intimate nature, or a member of [Appellant's] family or household." The indictment also contained a repeat-offender notification.

Appellant pleaded not guilty and was tried in March 2009. The jury charge included two counts: aggravated assault with a deadly weapon (Count One) and assault causing bodily injury to a family member with a prior conviction (Count Two). The jury returned a guilty verdict as to Count One, and the State waived Count Two. During the punishment phase of his trial, Appellant pleaded true to the repeat-offender notification. The jury found the repeat-offender notification true and assessed Appellant's punishment at thirty years' confinement, and the trial court sentenced Appellant accordingly.

### III. Factual Background

Appellant and Devona Harris started dating in approximately August 2007, and Appellant moved into Ms. Harris's apartment shortly thereafter. On October 15,

2

2007, Ms. Harris and Appellant got into an argument "over something small," and Ms. Harris asked Appellant to leave. Appellant followed Ms. Harris into the bedroom of her apartment, but she went into the living room and called 9-1-1.

While Ms. Harris was on the phone, Appellant grabbed the phone from her and determined the police were on the phone. Appellant then pulled out a gun and started hitting Ms. Harris. Appellant had his hand on the grip of the gun and his finger on the trigger as he hit Ms. Harris with the bottom of the gun on her head, face, and shoulders. Ms. Harris testified, "I don't know whether he's pulling the trigger or he was pulling the trigger and it was just jammed up or not, but he kept pulling it at me and then hit me with it again." She denied that she and Appellant were wrestling and said, "I thought that I was going to die. I thought he was going to kill me." Ms. Harris testified that Appellant struck her approximately nine times with the bottom of his gun. She testified that she suffered serious injuries and was beaten up pretty badly. She bled on the door and walls and required medical attention.

Ms. Harris testified that when the police officers knocked on the door in response to her 9-1-1 call, Appellant told her to go clean up and that he started scrubbing the blood off of the door and walls and told her to stay in the back room. She testified that she did not scream because she was afraid Appellant would shoot her before the police could open the door and that while Appellant was in the bathroom, she was able to run past the bathroom, unlock the front door, and run

3

outside. Ms. Harris kept the phone line open during the assault, and the events were recorded on the 9-1-1 tape admitted into evidence.

Arlington police officers Norman and Aklin arrived at the apartment during the assault. Officer Norman testified that they knocked on the apartment door several times without a response. He said that Ms. Harris eventually opened the door and walked out. Officer Norman said that after Ms. Harris opened the door, he saw Appellant standing in the apartment and asked Appellant to show him his hands to determine whether he was armed. Officer Norman then escorted Appellant outside the apartment; he saw blood on Appellant's hands, particularly in the web area across Appellant's knuckles. Officer Norman asked Appellant what happened, and Appellant told him that he must have injured himself when he and Ms. Harris were wrestling. Appellant denied having a gun and told Officer Norman that the gun belonged to Ms. Harris.

Ms. Harris testified that although she did not see Appellant go into her bedroom closet, she knew that he had gone into the area. She testified that Appellant put the gun in the bedroom closet, that she helped Officer Norman search for the gun in her bedroom closet, and that they found the gun in some luggage in her closet. She admitted on cross-examination, however, that the gun was actually in her purse, not a piece of luggage. Officer Norman testified that he recovered a loaded gun from Ms. Harris's purse, which was located inside the apartment. He stated that even though he could not recall if there was a round in the chamber when

4

he found the loaded gun, there were rounds in the magazine and the gun "could be made deadly quickly by just pulling the slide back and releasing" because doing so causes a round to go into the chamber. He also testified at trial that a firearm is a deadly weapon, even when not used to shoot someone.

Several photographs, a bloody shirt, and a bloody towel that Ms. Harris said Appellant used to clean up the blood were admitted into evidence at trial. The photographs depicted the apartment, the injuries to Ms. Harris, and the gun retrieved from the apartment. The bloody shirt and towel were recovered from the apartment a couple of days later, and Ms. Harris admitted that she waited a couple of days before telling the police about the bloody shirt and towel. Officer Norman testified that Ms. Harris's injuries looked worse in person than in the photographs and that Ms. Harris's head-injury was consistent with "a blunt force, hard, isolated object."

## IV. Sufficiency of the Evidence

Appellant contends in his first two points that the evidence is legally and factually insufficient to sustain his conviction and argues in his third and fourth points that the evidence is legally and factually insufficient to prove his use of a deadly weapon.

## A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements

5

of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

6

## B. Applicable Law

A person commits the offense of assault if that person intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens another with imminent bodily injury. Tex. Penal Code Ann. § 22.01(a)(1), (2). The offense becomes aggravated assault if the person committing the assault uses a deadly weapon during the commission of the offense. *Id.* § 22.02(a)(2).

## C. The Evidence is Legally Sufficient

In his first and third points, Appellant contends that the evidence is legally insufficient to prove that he committed aggravated assault and used or exhibited a deadly weapon.

The trial court instructed the jury that Appellant committed aggravated assault with a deadly weapon if the jury found beyond a reasonable doubt that he "intentionally or knowingly cause[d] bodily injury to Devona Harris by hitting her with a firearm" or "intentionally or knowingly threaten[ed] imminent bodily injury to Devona Harris" and "use[d] or exhibit[ed] a deadly weapon during the commission of the assault, to-wit: a firearm, that in the manner of its use or intended use was capable of causing death or serious bodily injury." Thus, the jury could have found Appellant guilty of aggravated assault if it believed beyond a reasonable doubt that Appellant either intentionally or knowingly caused bodily injury or intentionally or knowingly threatened imminent bodily injury to Ms. Harris and used or exhibited a firearm during the commission of the assault.

7

Ms. Harris testified that Appellant grabbed the phone from her, pulled a gun, had his hand on the grip and his finger on the trigger of the gun, and hit her with the bottom of the gun on her head, face, and shoulders. She said that Appellant struck her approximately nine times with the bottom of the gun. She testified that she suffered serious injuries and was beaten up pretty badly; she bled on the door and walls, and she required medical attention. Ms. Harris testified, "I thought that I was going to die. I thought he was going to kill me." She also testified, "I don't know whether he's pulling the trigger or he was pulling the trigger and it was just jammed up or not, but he kept pulling it at me and then hit me with it again." Officer Norman testified that he saw blood on Appellant's hands, particularly in the web area across Appellant's knuckles. He also testified that Ms. Harris's injuries looked worse in person than in the photographs and that the injury to her head was consistent with "a blunt force, hard, isolated object." This evidence is legally sufficient to support the jury's finding that Appellant intentionally or knowingly caused bodily injury to Ms. Harris or intentionally or knowingly threatened her with imminent bodily injury. *See* Tex. Penal Code Ann. § 22.01(a)(1), (2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *Santacruz v. State*, 237 S.W.3d 822, 826 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (op. on reh'g) (holding evidence legally sufficient to support aggravated assault conviction because victim testified the appellant struck her with a rifle and police officer testified the victim's injuries were consistent with being struck by a blunt object).

8

The evidence is also legally sufficient to support the jury's deadly weapon finding. The definition of a deadly weapon under section 1.07(a)(17)(B) includes "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009) (emphasis added). There is no requirement that the deadly weapon actually cause death or serious bodily injury before the jury can affirmatively answer the deadly weapon question. *See id*.; *see also McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding section 1.07(a)(17)(B)'s "plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury").

Ms. Harris testified that Appellant held the grip of the gun in his hand as he repeatedly struck her. She also said she did not know if Appellant was pulling the trigger or not but that "he kept pulling it at [her] and then hit [her] with it again." Officer Norman testified that he recovered a loaded gun from Ms. Harris's purse, which was located inside the apartment. He stated that even though he could not recall if there was a round in the chamber when he found the loaded gun, there were rounds in the magazine and that the gun "could be made deadly quickly by just pulling the slide back and releasing" because doing so causes a round to go into the chamber. Officer Norman also testified at trial that a firearm is a deadly weapon, even when not used to shoot someone and that the injury to Ms. Harris's head was

9

consistent with "a blunt force, hard, isolated object." This evidence is legally sufficient to support the jury's finding that Appellant used or exhibited a deadly weapon, a firearm, while assaulting Ms. Harris. *See Santacruz*, 237 S.W.3d at 826.

Viewing the evidence in a light most favorable to the prosecution, a rational jury could have determined beyond a reasonable doubt that Appellant used or exhibited a deadly weapon, a firearm, while intentionally or knowingly causing bodily injury to Ms. Harris or threatening her with imminent bodily injury. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *Santacruz*, 237 S.W.3d at 826. We hold the evidence was legally sufficient to support the jury's verdict, and we overrule Appellant's first and third points.

## D. The Evidence is Factually Sufficient

In his second and fourth points, Appellant contends that the evidence is factually insufficient to prove that he committed aggravated assault and used or exhibited a deadly weapon.

Reviewing all the evidence in a neutral light, we recall that Appellant told Officer Norman that he and Ms. Harris had been wrestling, that he denied having a gun, that he told Officer Norman that the gun belonged to Ms. Harris, and that Officer Norman found the gun in Ms. Harris's purse. We also recall that Ms. Harris said she did not see Appellant go into her bedroom closet, that she helped Officer Norman locate the gun in her bedroom closet, and that even though she initially testified that the gun was in some luggage, it was actually in her purse. Ms. Harris also testified

10

that she did not scream during the incident, that she could be heard on the 9-1-1 tape saying, "Don't leave" and "Please stay," and that she did not tell the police about the bloody shirt and towel until a couple of days after the incident. However, there was also evidence that Appellant struck Ms. Harris approximately nine times with the bottom of the gun, that Ms. Harris's injuries were serious enough that she bled on the door and walls and required medical attention, that Ms. Harris believed Appellant was going to kill her, that Officer Norman saw blood on Appellant's hands immediately after the incident, and that Officer Norman recovered a loaded gun while searching for it in the apartment.

Viewing the evidence in a neutral light, we conclude a rational trier of fact could have found beyond a reasonable doubt that Appellant used or exhibited a deadly weapon, a firearm, while intentionally or knowingly causing bodily injury to Ms. Harris or threatening her with imminent bodily injury. *See Santacruz*, 237 S.W.3d at 826 (holding evidence factually sufficient to support aggravated assault with a deadly weapon conviction because victim testified the appellant struck her with a rifle, police officer testified the victim's injuries were consistent with being struck by a blunt object, and evidence other than the appellant's and his sister's testimony did not support appellant's version of events). We cannot say that the evidence is so weak that the jury's determination was clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *See Lancon v. State,*

11

253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. We therefore hold the evidence was factually sufficient to support the jury's verdict. We overrule Appellant's second and fourth points.

### V. Admission of Evidence

Appellant contends in his fifth point that the trial court erred by admitting two exhibits relating to his guilty plea in a previous case, Cause No. 1021549D. He argues the exhibits should not have been admitted because the judgment was signed by a judge other than the judge that presided over the plea proceeding. The State counters that Appellant waived any error because he did not object at the time the evidence was admitted at trial. We agree with the State.

Before calling its first witness at trial, the State moved for the admission of State's Exhibit 2, the judgment in Cause No. 1021549D, and State's Exhibit 2-A, the judgment, indictment, written plea admonishments, certification of right to appeal, and docket sheet in Cause No. 1021549D. Specifically, the prosecutor stated, "Judge, at this time, the State would offer into evidence, pursuant to the plea of true of the defendant, for purposes of the record only, State's 2-A; for all purposes, State's 2." Appellant's counsel then stated, "There's no objections, Your Honor." Appellant's counsel also stated that he had no objection to State's Exhibit 2-A when the State moved for its admission for all purposes during the punishment phase of Appellant's trial.

Because Appellant did not object at trial to the admission of State's Exhibits 2 and 2-A, Appellant failed to preserve his complaint for appellate review. *See* Tex. R. App. P. 33.1(a); *see also James v. State*, 997 S.W.2d 898, 901 (Tex. App.—Beaumont 1999, no pet.) (holding the appellant failed to preserve his objection to a potentially void judgment by failing to object to its admission at trial). We overrule Appellant's fifth point.

## VI. Conclusion

Having overruled each of Appellant's five points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 27, 2010