

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0064-20

---

## JUAN CARLOS FLORES, Appellant

### v.

## THE STATE OF TEXAS

---

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## GRAYSON COUNTY

---

SLAUGHTER, J., delivered the opinion of the Court in which RICHARDSON, YEARY, NEWELL, WALKER, and MCCLURE, JJ., joined. HERVEY, J., filed a dissenting opinion in which KEEL, J., joined. KEEL, J., filed a dissenting opinion in which HERVEY, J., joined. KELLER, P.J., dissented.

## O P I N I O N

Appellant Juan Carlos Flores entered a convenience store and committed a robbery.

To facilitate the robbery, Appellant pretended he had a gun. The "gun," however, was an

electric drill covered in plastic bags with a black sleeve over the drill bit. Believing the drill

was a gun, the store owner gave Appellant the money from the register. Was the evidence

legally sufficient to support the finding that the drill was a deadly weapon within the meaning of that term as defined in the Penal Code,[1] when Appellant never attempted to strike, stab, or "drill" anyone, nor did he threaten to do so?  The answer is no. There was insufficient evidence to permit a jury to rationally conclude that Appellant used or intended to use the drill in a manner that was capable of causing death or serious bodily injury. We, therefore, reverse the judgment of the court of appeals which upheld Appellant's conviction for aggravated robbery based on his use or exhibition of a deadly weapon, and we remand this case to the trial court for reformation of Appellant's judgment to reflect a conviction for the second-degree felony offense of robbery and to hold a new trial on punishment.

## I. Background

Convenience store owner Nanu Shapakota was working in the store one evening when Appellant entered wearing a mask and holding what Shapakota believed was a gun. Appellant demanded that Shapakota give him all the money in the register. She complied. After Appellant left, she called the police.

In the course of investigating the robbery, police discovered that the object Shapakota believed to be a gun was instead a cordless electric drill wrapped in two plastic bags. While the drill contained a drill bit at the end, Appellant had covered the bit with a black sleeve or other black object to disguise it as a gun barrel. At trial, Shapakota testified that Appellant pointed the drill at her as though it were a gun, but he never attempted to

---

[1] *See* TEX. PENAL CODE § 1.07(a)(17).

strike or hit her with it and never threatened to do so. In fact, she testified that Appellant even told her that he did not want to hurt her.[2]

The lead detective in the case, Detective Mackay, testified that in the surveillance video Appellant can be seen pointing and shaking the drill at Shapakota while demanding money, but he acknowledged that the drill was not used to strike or stab her and Appellant never activated the drill to try to injure her. Mackay opined that the drill was capable of causing death or serious bodily injury because "you could use it as a blunt object. You could hit somebody with it. You could stab somebody with it. You could drill them with it. You can use it in multiple ways." Another detective who responded to the scene, Sergeant Conrad, similarly testified that the drill was a deadly weapon because "just by the sheer weight of it[,] you could bludgeon somebody to death with it. With a bit in it, you can stab somebody. You could drill somebody with it in an area that could basically kill them." While, as the detectives stated, there are uses of a drill which could cause serious bodily injury or death, here, there was no testimony suggesting that Appellant used or intended to use the drill in any such manner. Moreover, in reviewing the surveillance video: (1) Appellant made no motion suggesting an intent to strike Shapakota with the drill from

---

[2] Appellant told Shapakota that she only had a minute to put the money in the bag, and that he "didn't want to hurt her or nothing." Viewed together, the jury could have taken the statements to suggest that Appellant was threatening to shoot her if she took longer than a minute. But, of course, that is not something he could have accomplished with the drill. There is no suggestion that Appellant threatened to hurt her with the drill itself.

where he was standing a few feet away from her, separated by the cashier's counter;[3] (2) there was no evidence that the drill was activated or even functional at the time of the robbery;[4] and (3) there was no testimony as to whether the drill could have been used to stab or drill someone when it was covered in plastic bags and there was a sleeve over the bit end of the drill.

A jury ultimately convicted Appellant of aggravated robbery, with the aggravating element being his use or exhibition of a deadly weapon. *See* TEX. PENAL CODE § 29.03(a)(2). The trial judge sentenced Appellant to fifteen years in prison.

Appellant appealed, complaining that the evidence was insufficient to establish that he used or exhibited the drill as a deadly weapon, but the court of appeals disagreed. *Flores v. State*, No. 05-19-00034-CR, 2019 WL 6907076 (Tex. App.—Dallas Dec. 19, 2019) (mem. op., not designated for publication). The court reasoned that, although Appellant did

---

[3] The surveillance video from inside the store showing the robbery was played for the jury. Because this evidence is crucial to our analysis, we have made the video available for viewing on the Court's website at the following address: https://www.txcourts.gov/cca/media/ . The video shows an interaction between Appellant and Shapakota lasting around thirty seconds. At all times, Appellant is separated from Shapakota by the cashier counter. During most of the interaction, his back is turned to the video camera, such that it is not possible to see exactly what he is doing with the drill while she is removing cash from the register. But at no point does the video depict Appellant waving the drill around while standing close to Shapakota as if to strike her. Aside from the video, there was no testimony or other evidence to establish how far away from Shapakota Appellant stood while pointing the drill at her.

[4] While the drill was discovered in Appellant's home with the battery attached, there was no evidence that the drill was charged or operational in any way at the time of the offense. Detective Mackay confirmed that the drill never "activated to try to injure" Shapakota.

not use the drill to "overtly harm Shapakota, he certainly used it for intimidation value to accomplish the crime." *Id.* at *2. The court further relied on the testimony of Sergeant Conrad stating that "a drill is a deadly weapon because the sheer weight could bludgeon someone to death or a drill bit could stab someone." *Id.* Thus, the court concluded that Appellant "used and exhibited the drill in such a way that it was capable of causing death or serious bodily injury, and he used it to facilitate the robbery." *Id.* We granted Appellant's petition for discretionary review to evaluate the court of appeals' holding as to this sufficiency question.

## II.    Analysis

In reviewing the sufficiency of the evidence to support a conviction, we typically look to whether any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Long v. State*, 535 S.W.3d 511, 519 (Tex. Crim. App. 2017). We view the evidence in a light most favorable to the prosecution by resolving any factual disputes in favor of the verdict and deferring to the fact-finder regarding the weighing of evidence and the inferences drawn from basic facts. *Id*.; *see also Morgan v. State,* 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) ("This Court's role on appeal 'is restricted to guarding against the rare occurrence when a fact finder does not act rationally,' and we must 'defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'") (quoting *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)).

Sometimes, a sufficiency-of-the-evidence issue turns upon the meaning of the statute under which the defendant is being prosecuted. *Long,* 535 S.W.3d at 519. In those situations, after viewing the evidence in the light most favorable to the verdict, we ask if certain conduct actually constitutes an offense under the statute, which is a question of law we review *de novo*. *Id.*

Robbery is a second-degree felony. TEX. PEN. CODE § 29.02(b). If a person commits robbery and uses or exhibits a deadly weapon, then the offense is elevated to first-degree aggravated robbery. *Id.* § 29.03(a)(2),(b). Whether, in this case, the evidence was sufficient to convict Appellant for first-degree aggravated robbery instead of second-degree robbery hinges on whether the jury rationally concluded that Appellant "use[d] or exhibit[ed]" the drill as a deadly weapon during the robbery. *Id*. § 29.03(a)(2). For purposes of this case, a "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B).[5]

In conducting its analysis of this sufficiency issue, the court of appeals properly noted that under this Court's decision in *McCain v. State*, a "two-step process" must be conducted to determine whether the element of use or exhibition of a deadly weapon is satisfied. *Flores*, 2019 WL 6907076, at *1 (citing 22 S.W.3d 497, 502-03 (Tex. Crim. App.

---

[5] The statutory definition of a deadly weapon also includes "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17)(A). This "per se" definition is clearly not implicated here, and so the evidence must satisfy the alternative "manner of use or intended use" definition cited above.

2000)). But the court of appeals then erroneously cited that two-step process as being: "first analyze whether [the] object *could* be a deadly weapon and if so, then determine whether the deadly weapon was 'used' or 'exhibited' during the offense." *Id.* (emphasis added). Contrary to the court of appeals' suggestion, under the first step in *McCain*, the question is not whether the object "could" possibly be a deadly weapon under a hypothetical scenario; instead, it is whether the object "could be a deadly weapon *under the facts of the case*." *McCain*, 22 S.W.3d at 502; *see also id.* at 503 ("[A]n object is a deadly weapon *if the actor intends a use* of the object in which it would be capable of causing death or serious bodily injury.") (emphasis added). As we explained in *Prichard v. State,* under the broad language in Penal Code Section 1.07(a)(17)(B), "a 'deadly weapon' may be 'anything,' and there is no limitation as to what type of thing may be considered a deadly weapon." 533 S.W.3d 315, 320 (Tex. Crim. App. 2017). Thus, generally speaking, the nature of the object itself does not limit whether that object may be a deadly weapon; rather, it is only the "manner of [the defendant's] use or intended use" that provides any meaningful limitation to the broad statutory definition.

In *McCain*, we held that the evidence was sufficient to find that a butcher knife was a deadly weapon even though the knife remained in the defendant's back pocket during the robbery and the defendant never made any verbal threat to use the knife. *McCain*, 22 S.W.3d at 499. *McCain* involved a violent attack wherein the defendant kicked in the victim's kitchen door and began punching her. *Id.* During the attack, the victim saw what

she believed to be a knife sticking out of the defendant's back pocket. *Id.* She was afraid that the defendant would stab her with it. *Id.* The victim ultimately escaped and returned with the police. *Id.* Police later arrested the Appellant and found on his person a butcher knife with a nine-inch blade. *Id.*

In holding that the evidence was sufficient for finding that the knife was a "deadly weapon," we reasoned that the statute does not require that the actor actually intended death or serious bodily injury; the actor need only "intend[] a use of the object in which it would be capable of causing death or serious bodily injury." *Id*. at 503. We explained that the "placement of the word 'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *Id.* Thus, "the mere carrying of a butcher knife during such a violent attack as occurred in [*McCain*] was legally sufficient for a factfinder to conclude that the 'intended use' for the knife was that it be capable of causing death or serious bodily injury." *Id*. In other words, it was reasonable for the factfinder to conclude that the only reason McCain carried a butcher knife in his back pocket during his violent attack on the victim was that he intended to use the knife to stab the victim if he needed to do so to facilitate his crime.

As demonstrated in *McCain*, critical to a proper deadly-weapon analysis are the facts of the case showing the defendant's particular manner of use or intended use of the object—his reason for having the object with him. *Id.* at 502-03.[6] Such analysis was not

---

[6] *See also Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017) (citing *McCain* and

conducted by the court of appeals in the present case. Instead, the court of appeals summarily determined, without analyzing the evidence of Appellant's manner of use or intended use of the drill, that the drill was a deadly weapon simply because under some hypothetical set of facts it could be capable of causing death or serious bodily injury. The court's sole statement on this point was that "Sergeant Conrad testified a drill is a deadly weapon because the sheer weight could bludgeon someone to death or a drill bit could stab someone." *Flores*, 2019 WL 6907076, at *2. The court of appeals, therefore, erred by relying on speculation about some possible use of a drill as a deadly weapon, rather than examining the actual evidence in the record to determine whether Appellant intended any use (e.g., striking, stabbing, drilling) that would be capable of causing death or serious bodily injury.

The evidence in this case is, for the most part, undisputed. Appellant disguised the drill as a gun by covering it with plastic bags and by placing a black sleeve over the drill bit to make it look like a gun barrel. Appellant waved the drill around and shook it at Shapakota, pretending it was a gun. Shapakota thought it was a gun. Even viewing these facts in a light most favorable to the verdict, they fail to rationally support the conclusion that Appellant intended to use the drill to stab, drill, or bludgeon anyone. In fact,

---

noting that, in determining whether something is a deadly weapon under Section 1.07(a)(17)(B), "we consider words and other threatening actions by the defendant, including the defendant's proximity to the victim; the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the weapon; and the manner in which the defendant used the weapon").

Appellant's actions in covering the drill with plastic bags and placing a sleeve over the drill bit likely rendered the drill incapable of stabbing or drilling anyone. And while, as Detective Mackay stated, the drill could theoretically be used to bludgeon someone, nothing in Appellant's words or actions would permit a jury to rationally infer that he had any intention of using the drill in that manner.[7] While the State was of course not required to present evidence establishing that Appellant actually intended to use the drill to cause serious bodily injury or death, it was at least required to present some minimal evidence that he intended a violent use of the drill—one that would be at least "*capable of* causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17)(B) (emphasis added). No such evidence appears in the record.[8] In fact, Appellant neither threatened nor took any

---

[7] The dissenting opinion by Judge Hervey focuses on Appellant's proximity to Shapakota as evidence that Appellant intended to use the drill in a manner capable of causing death or serious bodily injury. First, Shapakota never testified that Appellant was close enough to reach her and the video is inconclusive on that point. It appears from the video that Appellant always stood at least three feet away and was separated from Shapakota by the cashier's counter, which was about waist-high and at least two feet wide. While at one point, Appellant leaned over the counter to look into the cash register, it appeared as though he pulled his hand holding the drill into his chest, pointing the drill away from Shapakota when he did so. Second, even if Appellant had been right next to Shapakota, there was still nothing in his words or actions suggesting that he intended to use the drill in a way capable of causing death or serious bodily injury. We disagree that under these circumstances his proximity alone, without more, can suffice to prove that the drill satisfied the statutory definition of a deadly weapon.

[8] The dissenting opinion by Judge Hervey disagrees with our analysis, in part, because it interprets our reasoning as requiring proof that the drill was operational at the time of the offense and that the drill could cause serious bodily injury or death even though it was wrapped in plastic and had a drill bit cover. Dissenting Opinion by Judge Hervey, at 2-3. With respect to this matter, we wish to clarify that our analysis should not be interpreted as requiring any such specific evidence from the State. We recognize that the jury is free to draw reasonable inferences from the evidence and that the State is permitted to prove up its case in any number of ways. But here, the problem is that

action to hurt anyone with the drill;[9] his only "use or intended use" of the drill was to threaten Shapakota with it by making her believe it was a gun and that he might use it to shoot her, which was factually impossible under the circumstances.[10] But Penal Code

the State's evidence was insufficient to establish *any* intended violent use of the drill by Appellant. And so, while the State was not required to affirmatively prove that Appellant actually intended some particular violent act (e.g., stabbing, drilling, or bludgeoning Shapakota with the drill), it was at least minimally required to show some intended use of the drill that would be capable of causing serious harm to her. Instead, the only "use or intended use" established by the evidence here was to scare Shapakota into believing that Appellant had a gun. Under these unique facts involving an object disguised as a firearm, the simple act of carrying such an object during a robbery, without more to suggest some intended violent use of the object, does not make it a deadly weapon.

[9] The dissenting opinion by Judge Hervey takes issue with the Court's analysis for pointing out that Appellant said he did not want to hurt Shapakota, stating that this is not conclusive evidence of intent. Dissenting Opinion by Judge Hervey, at 3-4. We agree that Appellant's statement standing alone is not conclusive, but as the dissent also points out, Appellant's intent "can be inferred from words and actions." *Id.* at 2. Appellant's statement combined with his actions reveal that the evidence is simply insufficient to show that Appellant intended to use the drill in a manner capable of causing death or serious bodily injury.

The dissenting opinion by Judge Keel similarly relies on Appellant's statement that he did not want to hurt Shapakota to draw the inference that Appellant would indeed hurt her with the drill if she did not comply with his demands. Dissenting Opinion by Judge Keel, at 1-2. For reasons we have already discussed above, we disagree that Appellant's statement (or any other aspect of his conduct, for that matter) can support such a rational inference. To be sure, the evidence supports the conclusion that Appellant intended to frighten Shapakota with the drill and make her falsely believe that she might be shot. But that does not equate to proof beyond a reasonable doubt that Appellant actually intended an entirely different use of the drill—striking, stabbing, or any other means that would be capable of causing death or serious bodily injury. In short, the gap between the evidence presented and the statutory requirements is too great to bridge without engaging in speculation about some intended use of the drill in a violent manner.

[10] Although factually distinguishable, we note that at least two intermediate courts of appeals have held that merely brandishing a toy gun during an offense does not constitute the use or exhibition of a deadly weapon. *See, e.g.*, *Hernandez v. State*, 332 S.W.3d 664, 667-68 (Tex. App.—Texarkana 2010) (holding evidence insufficient to find that toy gun was deadly weapon; it "was neither used to strike [the victim], nor was there any evidence suggesting either that Hernandez threatened to use or intended to use the toy in that manner. . . . [The victim] and her husband

Section 1.07(a)(17)(B) requires a manner of use or intended use that is *actually* capable of causing death or serious bodily injury. Because the evidence here supports that Appellant used the drill for intimidation purposes but falls short of establishing any intended use of the drill in a violent manner, such proof fails to satisfy the statutory requirements. Thus, given the lack of evidence to rationally support the jury's finding that Appellant's use or intended use of the drill was capable of causing death or serious bodily injury, we cannot agree with the court of appeals' conclusion upholding Appellant's conviction for aggravated robbery.

The question remains as to what remedy is appropriate under these circumstances. In *Bowen v. State*, we held that where an appellate court finds the evidence insufficient to support some aggravating element of an offense, but the evidence is otherwise sufficient as to the non-aggravated offense, the proper remedy is reformation of the judgment to the lesser-included offense. *See* 374 S.W.3d 427, 432 (Tex. Crim. App. 2012) (ordering

---

indicated only that Hernandez pointed the gun at them as if he was going to shoot them . . . . Because the use and manner of intended use (i.e., pointing and threatening as if to shoot) was not a use of the toy capable of causing serious bodily injury or death, we find such evidence was legally insufficient to allow a jury to infer the toy was a deadly weapon."); *Pena Cortez v. State*, 732 S.W.2d 713, 715 (Tex. App.—Corpus Christi 1987) ("Although the victims testified that appellant was holding a 'pistol' at the time of the offense, it is uncontroverted that 'the pistol' is a toy gun. This toy is not manifestly designed to inflict death or serious bodily injury, nor in the manner of its use is it capable of causing death or serious bodily injury. Although this toy gun may look very realistic, its appearance does not make it a deadly weapon."). While the instant case involves a drill disguised as a gun as opposed to a toy gun, the operative principle remains the same—in order for an object disguised as a firearm to meet the statutory definition for a deadly weapon, the evidence must reflect a use or intended use of the object that was actually capable of causing death or serious bodily injury. The mere threat of shooting someone with an object that is physically incapable of doing so does not meet the statutory requirements.

judgment reformed to second-degree misapplication of fiduciary property from first-degree offense after concluding that the record failed to support amount of misapplied funds that would support first-degree felony conviction). We explained that outright acquittal would be improper under those circumstances because, although the State failed to prove the aggravating element, it otherwise proved the essential elements of the offense beyond a reasonable doubt. *Id.* We find this principle to be applicable here. Because our holding today is limited to finding the evidence insufficient as to the aggravating element of the use or exhibition of a deadly weapon, this holding should not disturb the sufficiency of the evidence to support Appellant's conviction for the underlying offense of robbery. Accordingly, Appellant's conviction must be reformed to a conviction for the second-degree felony offense of robbery. *See* TEX. PENAL CODE § 29.02.

## III. Conclusion

In affirming Appellant's conviction and finding that the drill met the statutory definition for a deadly weapon, the court of appeals misapplied *McCain v. State* and determined that because a drill "could" theoretically be used to inflict serious bodily injury or death, it was necessarily a deadly weapon here. The court should have, instead, considered whether, under the particular facts of this case, the evidence showed that Appellant actually used or intended to use the drill in a manner that was "capable of causing death or serious bodily injury." Because we find the evidence insufficient to support the factfinder's conclusion that the drill was used or exhibited as a deadly weapon, we reverse

the judgment of the court of appeals. We remand the case to the trial court for it to reform the judgment to reflect a conviction for second-degree non-aggravated robbery and to conduct a new punishment trial.

Delivered: March 31, 2021

Publish